2023 IL App (1st) 220020
No. 1-22-0020

FIRST DIVISION
March 6, 2023

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| CARMEN MERCADO and JORGE LOPEZ, on Behalf of Themselves and All Others Similarly Situated | ) ) ) | Appeal from the Circuit Court of Cook County, Chancery Division |
| | ) | No. 2020 CH 7349 |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | The Honorable Allen P. Walker, Judge Presiding. |
| S&C ELECTRIC COMPANY, | ) ) | |
| Defendant-Appellee. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Hyman and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellants, Carmen Mercado and Jorge Lopez, filed a single-count class action

complaint against defendant-appellee, S&C Electric Company (S&C), seeking allegedly unpaid

wages pursuant to the Illinois Minimum Wage Law (Wage Law) (820 ILCS 105/1 *et seq*. (West

2020)), as well as statutory interest, penalties, and attorney fees and costs. Plaintiffs claim that

defendant violated the Wage Law by incorrectly calculating their regular rate of pay for the

purpose of paying them for working overtime because they received certain bonuses and incentive

payments that they argue were improperly excluded from this overtime calculation. Defendant

contends that the bonuses and incentive payments were not paid based on the number of hours

worked and therefore fall under an enumerated list of exclusions to the regular rate of pay, found in the regulations to the Wage Law. Plaintiffs further argue that, despite receiving an adjustment payment from defendant following the end of their employment, they still have not received the full amount of overtime, plus statutory interest, fees, and penalties pursuant to the Wage Law, that they are owed. Defendant argues that the adjustments account for all unpaid wages owed to plaintiffs and plaintiffs no longer have any remaining damages they could plead.

¶ 2    Defendant moved to dismiss the complaint on the above-stated grounds. The circuit court agreed with the defendant's interpretation of what qualifies as a gift or other sum of money not measured by or dependent on hours worked under the regulations to the Wage Law but declined to dismiss the case because of a lack of evidence in the record to determine whether the bonuses at issue fell within that category. However, the court dismissed the complaint on the basis that plaintiffs' alleged underpayment was satisfied in whole by defendant's adjustment payments and plaintiffs were therefore unable to plead damages. Plaintiffs now appeal from this ruling. We now affirm the circuit court's order.

¶ 3                                        BACKGROUND

¶ 4    The underlying matter arises from a class action lawsuit brought by named plaintiffs, Mercado and Lopez, against their former employer, defendant S&C for unpaid overtime wages pursuant to the Wage Law. Plaintiffs were formerly employed as factory assembly workers at S&C; Mercado worked from 2004 to June 2020 and Lopez from February 2019 to September 2019. Both were paid hourly in these positions. Defendant paid its hourly employees certain nondiscretionary bonuses, which are described as a "KPI initiative," a "MIS bonus," a "success sharing bonus," and a "seniority award" (collectively, the bonuses). Plaintiffs' complaint alleges

that they received these bonuses, that the bonuses were not categorized as gifts, and that the bonuses were paid in recognition of services performed.

¶ 5    Over the course of their employment, plaintiffs worked some amount of overtime. In their complaint, they allege that defendant paid them for these overtime hours at a rate below the minimum required by the Wage Law. See 820 ILCS 105/4a(1) (West 2020) (overtime pay must be calculated "at a rate not less than 1½ times the regular rate at which [the worker] is employed"). This, they claim, is because defendant improperly excluded the bonuses in calculating plaintiffs' "regular rate of pay." On or around July 31, 2020, after both plaintiffs had ended their employment with S&C, defendant paid Mercado and Lopez what is described in the complaint as "adjustment payments" of $486.74 and $10.33, respectively, which plaintiffs allege were insufficient to make up for the amount they would have received in overtime pay had the bonuses been included in the calculation.

¶ 6    On December 17, 2020, plaintiffs filed a one-count complaint on behalf of themselves and a similarly situated class of hourly workers, alleging a violation of the Wage Law for the underpayment of overtime. On March 5, 2021, they filed their first amended complaint. Defendant moved to dismiss the complaint on March 31, 2021, pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)). In its combined motion to dismiss, defendant argued that the bonuses were properly excluded from the calculation of regular rate of pay pursuant to the Wage Law regulations and, in the alternative, plaintiffs failed to plead damages because they had received the adjustment payments and therefore had been compensated for any underpayment, even if the bonuses should have been included.

¶ 7    The circuit court agreed with defendant that the plain language of the Wage Law enacting regulations excluded bonus payments that were not measured by or dependent on hours worked

from the calculation of an employee's regular rate of payment for the purposes of determining overtime payments, and the court further found this interpretation to be consistent with the sections of the Wage Law addressing the calculation of overtime payments for nonhourly employees. However, the court denied defendant's motion to dismiss on the grounds that the bonuses at issue were excluded from plaintiffs' overtime payment calculations, instead finding an issue of material fact as to whether any of these bonuses were measured by or dependent on hours worked. The court further stated that the only evidence presented on this question was a single conclusory statement made in the affidavit of Aurelie Richard, defendant's chief human development and strategy officer. Her assertion that none of the incentive payments were measured by or dependent on hours worked was unsupported by any other facts, and the court declined to consider that portion of the affidavit. Specifically, the language the court struck read, "None of the incentives alleged in the Complaint, including KPI, success sharing, or the seniority award, are measured or dependent on hours worked by team members." The court kept the remainder of the affidavit, including Richard's explanation of the formula used to determine plaintiffs' adjustment payment amounts, which she claims included both the incentive payments described above, as well as a 5% annual interest rate.

¶ 8     As for defendant's other basis for moving to dismiss, the circuit court granted the motion pursuant to section 2-619(a)(9) (*id*. § 2-619(a)(9)), finding that plaintiffs failed to prove that they had suffered any underpayment of their wages because defendant showed that it had provided both plaintiffs an adjustment payment in an amount satisfying the underpayment, which they did not refuse or return. Plaintiffs now appeal from that order.

¶ 9                                   ANALYSIS

¶ 10                              Standard of Review

¶ 11 A section 2-619.1 motion allows for a combined motion to dismiss under sections 2-615 and 2-619 (*id*. §§ 2-615, 2-619), as well as motions for summary judgment under section 2-1005 (*id*. § 2-1005). *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 688 (2004).

¶ 12 A section 2-615 motion to dismiss presents the question of whether the plaintiff has pled sufficient facts in the complaint to entitle him to relief if proven. *Powell v. American Service Insurance Co.*, 2014 IL App (1st) 123643, ¶ 13. In reviewing a dismissal pursuant to section 2-615, all well-pleaded facts in the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Id.* A dismissal pursuant to section 2-615 is only proper where it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Id.*; *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill. App. 3d 1028, 1033 (2001). A plaintiff cannot simply rely upon conclusions of law or fact unsupported by specific factual allegations. *Powell*, 2014 IL App (1st) 123643, ¶ 13; *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1039 (1998). However, the complaint is to be liberally construed, viewed in the light most favorable to the plaintiffs. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). The standard of review for a dismissal under section 2-615 is *de novo*. *Powell*, 2014 IL App (1st) 123643, ¶ 13.

¶ 13 An order of dismissal pursuant to a section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)) is similarly reviewed *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). The section 2-619 motion admits as true all well-pleaded facts, all reasonable inferences to be drawn from the facts, and the legal sufficiency of the claim. *Id.* In addition, all pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *Id.* A dismissal of a pleading pursuant to section 2-619 is based on certain defects or defenses that defeat the claim. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18.

¶ 14 A motion to dismiss under section 2-619(a)(9) specifically argues that the pleadings are barred by an affirmative matter not otherwise listed in this section. 735 ILCS 5/2-619(a)(1) (West 2020). An affirmative matter under section 2-619(a)(9) is "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). In a section 2-619(a)(9) motion, "[t]he defendant does not admit the truth of any allegation in plaintiff's complaint that may touch on the affirmative matter raised in the [section] 2-619 motion." *Barber-Colman v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992). Where the movant supplies an affirmative matter, the opposing party cannot rely on bare allegations alone to raise issues of material fact. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006). Neither conclusory allegations nor conclusory affidavits are sufficient to defeat properly submitted facts in a section 2-619 motion. *Allegis Realty Investors v. Novak*, 379 Ill. App. 3d 636, 641 (2008). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

¶ 15 The Wage Law and Statutory Interpretation

¶ 16 The Wage Law (820 ILCS 105/4a(1) (West 2020)) provides for the payment of statutory overtime, stating that:

> "§ 4a. (1) Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed."

The regulation of the Wage Law that defines the "regular rate" of pay is found in Title 56, section 210.410, of the Illinois Administrative Code (56 Ill. Adm. Code 210.410 (1995)). Section 210.410 lists seven categories that are excluded from determining an employee's regular rate, as follows:

"The 'regular rate' shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not include:

(a) Sums paid as gifts such as those made at holidays or other amounts that are not measured by or dependent on hours worked; and

(b) Payments made for occasional periods when no work is performed due to a vacation, holiday, illness, failure of employer to provide sufficient work, or other similar cause; and

(c) Sums paid in recognition of services performed which are:

(1) determined at the sole discretion of the employer, or

(2) made pursuant to a bona fide thrift or savings plan, or

(3) in recognition of a special talent; and

(d) Contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old age, retirement, life, accident, or health insurance or similar benefits for employees; and

(e) Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight a day where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; and

(f) Extra compensation provided by a premium rate paid to employees on Saturdays, Sundays, holidays or regular days of rest where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; and

(g) Extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic workday where such premium rate is not less than one and one-half times the rates established in good faith by the contract or agreement for like work performed during such workday or workweek." *Id.*

¶ 17    As enforcement of the minimum wage law, the Wage Law provides the following remedy to employees:

"(a) If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a) (West 2020).

¶ 18    While it is uncontested that plaintiffs were paid on an hourly basis, the court also looked at the regulation that defines the regular rate for nonhourly employees, which states:

"(b) The regular rate is a rate per hour. The Act does not require employers to pay employees on an hourly rate basis. Their earnings may be determined on a piece-rate, salary, commission, or some other basis, but in such case the overtime pay due must be

computed on a basis of the hourly rate derived from such earnings." 50 Ill. Adm. Code 210.420(b) (1995).

¶ 19 The parties dispute whether any of the bonuses fell into any of the above exclusions or whether they should have been included in calculating plaintiffs' rate of overtime payment. The parties further dispute whether plaintiffs are able to plead damages in light of defendant's adjustment payments, which defendant claims covered any underpayment alleged by plaintiffs.

¶ 20 Our primary objective when interpreting a statute is to give effect to the intent of the legislature. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Where the meaning of the text is clear on its face, we apply the plain language of the statute, without resort to outside aids or tools of interpretation. *Id*; *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Statutory terms are not to be interpreted in a vacuum; rather, they must be viewed as a whole with the rest of the statute's provisions. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 27; *In re Madison H.*, 215 Ill. 2d 364, 372 (2005). Furthermore, in reading a statute, no term should be rendered superfluous or meaningless, and we shall not depart from the plain meaning of the text to read into the statute any "exceptions, limitations, or conditions that conflict with the legislative intent." *JPMorgan*, 238 Ill. 2d at 461. In interpreting the statute, we presume that the legislature "did not intend absurdity, inconvenience or injustice." *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001); see also *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 14.

¶ 21                    Defining Regular Rate Under the Wage Law

¶ 22 As a preliminary matter, we note that the circuit court rejected defendant's motion to dismiss pursuant to the argument it put forth under section 2-615, that the bonuses plaintiffs received were properly excluded from calculating their overtime payment rate. Rather, the court disagreed with plaintiffs' argument that the plain meaning of section 4a of the Wage Law resulted

in an "absurd interpretation" that was inconsistent with the rest of the Wage Law, specifically the provisions for calculating overtime payments for workers whose salary was not based on an hourly rate. Plaintiffs argued, as they do on appeal, that the court must look outside the Wage Law to federal guidance on calculating regular rate under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et seq.* (2018)) and utilize certain canons of statutory construction in order to interpret the Wage Law regulation defining the regular rate of payment.

¶ 23     The circuit court held that the plain meaning of the statute did not create an absurd result, and it was unnecessary to look beyond the face of the statute. Specifically, by excluding "[s]ums paid as gifts such as those made at holidays or other amounts that are not measured by or dependent on hours worked," the regulations did not result in an inconsistent interpretation of the Wage Law as it applied to overtime payments for hourly and nonhourly workers. 56 Ill. Adm. Code 210.410(a) (1995)

¶ 24     What the circuit court did not rule on, however, was whether the bonuses paid to plaintiffs fell under the gift exception in section 210.410(a). Rather, the court declined to dismiss plaintiffs' complaint on those grounds, due to the existence of a genuine issue of material fact as to whether the bonuses should have been included in calculating plaintiffs' overtime rate. The court did strike the portion of Richard's affidavit where she stated that none of the bonuses were measured by or dependent on hours worked, finding her statement to be conclusory and unsupported by any other facts.[1] Beyond the affidavit, there were no other facts in the record explaining these bonuses.

¶ 25     As an initial matter, we note that we disagree with the circuit court that the portion of Richard's affidavit, where she states that the KPI, success sharing, and seniority awards were not measured by or dependent on hours worked, ought to have been stricken as a conclusory statement

---

[1] The circuit court's ruling on striking a portion of Richard's affidavit is not before us on appeal.

unsupported by sufficient facts. She is presented as an individual at S&C with knowledge of these bonuses and what they entailed, and her affidavit is based on her personal knowledge. Furthermore, plaintiffs did not counter her affidavit with one of their own and have not pled sufficient facts contradicting Richard's testimony. When ruling on a motion to dismiss, all well-pled facts in the complaint are accepted as true; however, facts contained in an uncontested affidavit must also be accepted as true. *Pilipauskas v. Yakel*, 258 Ill. App. 3d 47, 54 (1994). Regardless, we ultimately reach the same result as the circuit court in its decision. See also *Pekin Insurance Co. v. AAA-1 Masonry & Tuckpointing, Inc.*, 2017 IL App (1st) 160200, ¶ 21 ("On appeal, a reviewing court may affirm the trial court's ruling for any reason supported by the record regardless of the basis relied upon by the trial court.").

¶ 26    Plaintiffs argue that the court erred in holding that the Wage Law excludes any and all employee compensation that is not based on hours worked. They further argue that the bonuses they received were not, definitionally, "gifts," as a basis for not categorizing them as exempt gifts pursuant to section 210.410(a) of Title 56 of the Illinois Administrative Code (56 Ill. Adm. Code 210.410(a) (1995)). We again note that the circuit court did not make any findings regarding the nature of the specific bonuses plaintiffs received. We therefore cannot rule on whether the court should have found that the bonuses were or were not gifts, as this issue is not properly before us. As for whether the circuit court actually held that section 210.410(a) excluded all recompense not based on hours worked, and whether this was a reading that was inconsistent with certain parts of the Wage Law, we disagree with plaintiffs' explanation of the circuit court's order. The court states in its order that its findings are not inconsistent with the sections of the Wage Law that provide for the determination of overtime pay for employees who are not compensated on an hourly basis, such as those paid on commission, piece-rate, or salary, because the regulations provide a formula

for converting nonhourly work to an hourly rate that should be used for determining overtime pay, and because the regulations specifically include bonuses in those calculations. See 56 Ill. Adm. Code 210.430 (1995).[2]

¶ 27    We agree that there is no inconsistency in finding that hourly workers' bonuses that are not measured by or derived from hours worked are excluded from calculating the rate of overtime pay for such workers. That is merely the plain reading of the Wage Law regulations at section 210.410(a). While the regulation uses the phrases "sums paid as gifts" and "other amounts," there is nothing in the language of the statute or its regulations that would require us to exclude bonuses, incentives, or any other term plaintiffs use to describe the payments from defendant that they seek to include in their overtime pay. Nowhere in the statute or its enacting regulations did our legislature provide an exclusion for bonuses or other such payments that are paid to hourly workers based on hours worked. It is plaintiffs' burden to show that the bonuses at issue qualify as such and do not fall under any other exclusion. Following the rules of statutory interpretation, we cannot read into the text any intent by the legislature to exclude all bonuses where no such language exists; we find that the circuit court did not do so in its ruling. Rather, it applied the plain meaning of the text where it was clear on its face to conclude that our legislature intended for sums received by hourly workers, that are not measured by or dependent on hours worked, to be excluded from the calculation of regular payment rate.

¶ 28    Plaintiffs attempt to argue that the circuit court improperly expanded the exclusion in section 210.410(a) by applying it to sums that were not paid as gifts; plaintiffs contend that this

---

[2] "When an employee is employed on a piece-rate basis (so much per piece, dozen, gross, etc.) the regular rate of pay is computed by adding together the total earnings for the workweek from piece rates and all other earnings (*such as bonuses*) and any sums paid for waiting time or other hours worked. This sum is then divided by the number of hours worked in that week to yield the piece worker's 'regular rate' for that week." (Emphasis added.) 56 Ill. Adm. Code 210.430(b) (1995).

provision should be read to apply only to "gifts" as defined by Black's Law Dictionary and no other payments, and the payments that are "in the nature of gifts." They claim that the court ignored the phrases in this section that limit this exclusion to only gifts and gift-like payments, namely "such as" and "or other amounts." 56 Ill. Adm. Code 210.410(a) (1995) ("Sums paid as gifts *such as* those made at holidays *or other amounts* that are not measured by or dependent on hours worked ***." (Emphases added.)). This argument fails; as Defendant notes, the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et seq.* (2018)) and its implementing regulations have a similar exemption, enacted before the Wage Law and its regulations, and the language in the federal texts expressly limits the exemption to sums paid as gifts or in the nature of gifts. See 29 U.S.C. § 207(e)(1) (2018) (regular rate shall not include "sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency"); 29 C.F.R. § 778.212(b) (2020) ("To qualify for exclusion under section 7(e)(1) the bonus must be actually a gift or in the nature of a gift. If it is measured by hours worked, production, or efficiency, the payment is geared to wages and hours during the bonus period and is no longer to be considered as in the nature of a gift."). Plaintiffs argue that the circuit court should have looked outside the Wage Law and compare language from other statutes—to the extent that Defendant agrees that such a comparison would be proper in order to read the Wage Law, this only supports the court's interpretation. The Wage Law could have adopted this language as well, but it did not. There is no definition of "gift" or "sums in the nature of gifts" in either the statute or its implementing regulations. The circuit court did not read an overly expansive meaning of the section 210.410(a) exclusion into the regulation. Furthermore, the circuit court found insufficient evidence in the record to determine the nature of the bonuses plaintiffs received; we therefore do not know whether

they would fall under even plaintiffs' narrower version of the exclusion. We therefore find that the circuit court did not err both in its ruling on the meaning of the Wage Law regulations and in denying the section 2-615 portion of the motion to dismiss.

¶ 29                    Whether Plaintiffs Alleged an Underpayment

¶ 30    The circuit court stated in its order that it could not determine whether there originally was any underpayment, due to the lack of any facts in the record addressing the nature of the bonuses. However, the remaining portions of Richard's affidavit that the circuit court did not strike established that the bonuses were accounted for in the adjustment payments that plaintiffs received. The court stated that plaintiffs admitted they received and kept the adjustment payments, that they do not dispute that the amount of the adjustments was insufficient to make them whole, and that they conceded that there was no statutorily mandated deadline for defendants to have made up for any unpaid overtime under the Wage Law. The circuit court therefore dismissed their complaint on the grounds that the adjustments satisfied the underpayments and that plaintiffs failed to offer any authority for their position that the Wage Law allowed for them to recover damages that existed in the months before they received the adjustments.

¶ 31    On appeal, plaintiffs argue that they never admitted that the adjustments were sufficient to make up for the unpaid overtime. They further argue there must be a deadline in the Wage Law by which an employer is required to cure an underpayment of overtime wages because if there were not, it would lead to an absurd result, such as allowing an employer to repay an employee the day before the employee's suit against the employer goes to trial. Plaintiffs do not point to any portion of the Wage Law or its regulations that states the length of this deadline or otherwise mentions any deadline. In fact, they concede that the statute contains no such provision. They cite to the

appropriate portion of the statute, discussing remedies available for an employer's violation of the Wage Law, which is found in section 12(a). The statute provides that an employee

> "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a) (West 2020).

¶ 32    To circumvent the issue of the lack of a payment deadline in the Wage Law, plaintiffs argue that they are entitled to recover treble damages plus attorney fees and costs and a 5% monthly penalty for each month during which the underpayment remained outstanding, regardless of whether or when they received the adjustment payments. They further argue that they still have not been made whole, because the adjustments did not include the plaintiffs' bonuses in computing their overtime payment rate. However, Richard's affidavit clearly states that incentive payments were used to calculate the adjustment payment. Finally, plaintiffs contend that the court should adopt the deadline for payment of wages found in the Illinois Wage Payment and Collection Act (Collection Act), which states that wages must be paid within 13 days after the end of a pay period. 820 ILCS 115/4 (West 2020).

¶ 33    We decline to follow plaintiffs' contention that we should read into the Wage Law language that simply is not present in the statute. See *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) ("There is no rule of construction that allows a court to declare that the legislature did not mean what the plain language of the statute imports."). Furthermore, where the text of a statute is clear on its face, we do not look outside the text to interpret it and give it effect. See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994).

Plaintiffs do not provide any support to suggest that our legislature intended to apply the payment deadline of the Collection Act to the Wage Law. Plaintiffs cannot maintain pleadings that defendant was required to make them whole pursuant to the Wage Law, by the deadline of the Collection Act.

¶ 34    Plaintiffs state in their amended complaint that after they left their employment with defendant, defendant paid each of them an adjustment payment, but in both instances, the amounts were "insufficient to cover the entirety of the shortfall and statutory damages and penalties owed" because the overtime calculations did not include the bonuses plaintiffs received. However, as we stated above, plaintiffs have not showed that the bonuses should have been included in those calculations. Even when construing all well-pled facts in a light most favorable to plaintiffs, it is clear that plaintiffs are not able to contest the contents of Richard's affidavit, which support defendant's argument that the bonuses did not need to be included in calculating the overtime rate. Furthermore, in the affidavit, Richard provides the formula used to calculate the amount of the adjustment payments; regardless of whether defendant included the bonuses in plaintiffs' overtime payment rate—and of course, defendant's position here is that they were exclusions pursuant to the administrative code—the evidence it puts forward is meant to show that the bonus amounts were factored into the adjustments anyway. While plaintiffs do not provide evidence to contradict the use of the formula identified by Richard, they claim that, however the adjustments were calculated, they were insufficient and specifically should have included the interest and penalties provided for late payments in section 12 of the Wage Law (820 ILCS 105/12(a) (West 2020)). Even without an explicit deadline for payment of wages in the Wage Law, defendant does not dispute that, for some amount of time, plaintiffs were owed unpaid wages after the end of their employment. This was the purpose of issuing the adjustment payments.

¶ 35    Reading the pleadings in the light most favorable to plaintiffs, and liberally construing the allegations of the complaint, we find that plaintiffs have failed to sufficiently plead an underpayment. The Wage Law includes an exception for bonuses and incentive payments. Plaintiffs admit that they received, accepted, and kept the adjustment payments. Richard's affidavit, which, again, we believe not to be conclusory as the circuit court found, provided that the bonuses were not dependent on or measured by hours worked, and we agree with the circuit court that they therefore should not have been included in calculating overtime. Regardless, Richard's uncontested affidavit also states that the formula for calculating plaintiffs' adjustment payments included incentive payments and an added 5% annual interest rate. Defendant established that Richard had the requisite knowledge to inform the court of the nature of the bonuses, and plaintiffs have not shown that they were entitled to anything more after they received the adjustment payments. Their claim that the bonuses were based on hours worked is entirely speculative and not supported by any facts in the record. We therefore affirm the circuit court's dismissal of their complaint.

¶ 36                                CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed on the issue of the court's ruling on whether the payments in question should have been included in the overtime calculation and on the issue of whether plaintiffs sufficiently pled damages of underpayment in light of the adjustment payments.

¶ 38    Affirmed.

***Mercado v. S&C Electric Co.*, 2023 IL App (1st) 220020**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-CH-7349; the Hon. Allen P. Walker, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher J. Wilmes and Margaret E. Truesdale, of Hughes Socol Piers Resnick & Dym, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | John T. Roache and Megan M. Kokontis, of Akerman LLP, of Chicago, for appellee. |
| *Amicus Curiae*: | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Alex Hemmer, Deputy Solicitor General, of counsel), for *amicus curiae* State of Illinois. |