2023 IL App (1st) 220078
Opinion filed: May 4, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0078

KATHLEEN HARPER, as a Taxpayer of the City of　　　)　　Appeal from the
Chicago, an Illinois Municipal Corporation, and as a　　)　　Circuit Court of
Taxpayer of Cook County Illinois, an Entity of Local　　)　　Cook County
Government, and Suing Derivatively on Behalf of the City )
of Chicago and Cook County　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff-Appellant,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　　　　　)　　No. 18 L 010842
　　　　　　　　　　　　　　　　　　　　　　　　　)
HEALTH CARE SERVICE CORPORATION, and　　　　　)
THE CITY OF CHICAGO　　　　　　　　　　　　　　)　　Honorable
　　　　　　　　　　　　　　　　　　　　　　　　　)　　Patrick J. Sherlock,
　　　　Defendants-Appellees,　　　　　　　　　　　)　　Judge, presiding.
　　　　　　　　　　　　　　　　　　　　　　　　　)

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1　Plaintiff, Kathleen Harper, brought a taxpayer derivative suit on behalf of the City of Chicago (City) and Cook County, against defendant, Health Care Service Corporation (HCSC), which administers the City's employee health care program. Plaintiff sought the return of taxpayer funds that the City used to pay HCSC, and she asserted various theories of recovery pursuant to section 8-10-10 of the Illinois Municipal Code (65 ILCS 5/8-10-10 (West 2020)), section 2-92-050 of the Chicago Municipal Code (Chicago Municipal Code § 2-92-050 (amended July 19, 2000)), article VIII of the Illinois Constitution (Ill. Const. 1970, art. VIII), section 2.5 of the Freedom of Information Act (FOIA) (5 ILCS 140/2.5 (West 2020)), and section 22.2(f) of the

Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/22.2(f) (West 2020)). Plaintiff amended her complaint multiple times, culminating in the fourth amended complaint containing eight counts. The circuit court dismissed all eight counts of the fourth amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)) and, additionally, dismissed counts VI and VIII pursuant to section 2-619 (735 ILCS 5/2-619 (West 2020)). Plaintiff appeals the dismissal of her fourth amended complaint as well as the court's prior order denying her motion for partial summary judgment with respect to counts I and II of her third amended complaint. We affirm.

¶ 2      Certain pertinent facts regarding the administration of the City's employee health care plan (the Plan) are undisputed and/or of public record and are subject to judicial notice although not pleaded. See *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 26; *Smyth v. Kaspar American State Bank*, 6 Ill. App. 2d 64, 76 (1955). Specifically, the Chicago City Council (City Council) passed a resolution in 1986 establishing the procedure for the mayor to exercise authority over the Plan, including its administration. The first step was for the mayor to approve of each company providing hospital and medical insurance coverage for City employees. The second step was for the mayor and the corporation counsel to approve of the policy provisions and rates.

¶ 3      In 1989, the mayor issued an executive order establishing a benefits committee to review and evaluate proposals for Plan administration services and advise the mayor thereon.

¶ 4      In 1994, the benefits committee recommended that HCSC, an Illinois mutual insurance company, be retained as the Plan administrator. The mayor approved the selection of HCSC. The City and HCSC negotiated the terms and conditions by which HCSC would administer the Plan, and the City Council passed an appropriations ordinance allocating funding for administration of

the Plan. HCSC warranted that it was "ready, willing and able to perform the [administration services] as of the effective date of [the 1994 agreement]." The term of the 1994 agreement was stated as January 1, 1994, through December 31, 2006, with the possibility of a one-year extension, and it contained a provision requiring HCSC to continue to administer the Plan after the termination of the agreement until those services could be transitioned to another provider. HCSC began administering the Plan on January 1, 1994. The mayor did not actually sign the 1994 agreement until November 2006, but the parties treated the agreement as if it related back to its effective date of January 1, 1994. See *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1003 (2010) ("Such relation back *** contravenes no principle of law and is determined by the intent of the parties as deduced from the instrument itself." (Internal quotation marks omitted.)).

¶ 5    After the expiration of the 1994 agreement, HCSC continued to administer the Plan pursuant to the contractual provision requiring it to do so until a new administrator was in place.

¶ 6    In 2008, the City Council again passed an appropriations ordinance allocating funding for administration of the Plan, the mayor again approved the selection of HCSC as Plan administrator, and the City and HCSC entered into an agreement for HCSC to administer the Plan beginning January 1, 2008. The term of the 2008 agreement was from January 1, 2008, to December 31, 2016, with the possibility of a two-year extension, and it also contained the provision requiring HCSC to continue to administer the Plan after the termination of the agreement until those services could be transitioned to another provider. The mayor signed the 2008 agreement no earlier than January 1, 2014, but the parties treated the agreement as if it related back to its effective date of January 1, 2008.

¶ 7    Plaintiff filed her taxpayer derivative suit on October 5, 2018, purportedly acting as a taxpayer on behalf of the City whose taxes were used to pay HCSC for its administration of the

Plan. In her original complaint, she alleged that as Plan administrator, HCSC contracted with health care providers for discounted rates on providers' services but then fraudulently billed the City at the full, undiscounted rates.

¶ 8    Plaintiff subsequently filed a second amended complaint, adding a claim for breach of fiduciary duty.

¶ 9    In March 2019, plaintiff filed her third amended complaint against HCSC, alleging claims for fraud, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, constructive fraud, breach of contract, and equitable accounting. This complaint also named Cook County as a nominal plaintiff and real party in interest and the City as a nominal defendant. HCSC moved to dismiss. Following briefing on the motion, plaintiff voluntarily dismissed Cook County as a real party in interest. The circuit court then dismissed plaintiff's claims against HCSC for breach of fiduciary duty and constructive fraud, allowing plaintiff's other claims to proceed.

¶ 10    After the completion of written discovery, plaintiff moved for partial summary judgment on counts I and II of the third amended complaint on the theory that the 2008 agreement was void under section 8-10-10 of the Illinois Municipal Code (65 ILCS 5/8-10-10 (West 2018)) and section 2-92-050 of the Chicago Municipal Code (Chicago Municipal Code § 2-92-050 (amended July 19, 2000)) because it was signed by the mayor years after its effective date. Plaintiff argued that because HCSC had no valid contract with the City from 2008 to 2014, it must return all taxpayer funds it received from the City for those years. The circuit court denied plaintiff's motion for partial summary judgment, concluding that "[t]his theory is nowhere to be found in the operative complaint." The circuit court further concluded that even if that theory had been properly pleaded, plaintiff still was not entitled to summary judgment because neither section 8-10-10 of the Illinois

Municipal Code nor section 2-92-050 of the Chicago Municipal Code applied to the 2008 agreement.

¶ 11    Plaintiff then filed her fourth amended taxpayer derivative action on September 2, 2021, against HCSC. Count I was brought pursuant to sections 8-10-10 and 8-10-21 of the Illinois Municipal Code. Section 8-10-10 states:

> "Every contract involving amounts in excess of $10,000 shall be signed by the mayor or his duly designated agent, by the comptroller and by the purchasing agent, respectively, of such municipality." 65 ILCS 5/8-10-10 (West 2020).

¶ 12    Section 8-10-21 states:

> "Any purchase order or contract executed in violation of this Division 10 shall be null and void as to the municipality and if public funds shall have been expended thereupon the amount thereof may be recovered in the name of the municipality in an appropriate action instituted therefor." *Id.* § 8-10-21.

¶ 13    Plaintiff alleged that the 1994 and 2008 agreements between HCSC and the City involved amounts in excess of $10,000 and that each of those agreements are null and void under sections 8-10-10 and 8-10-21 of the Illinois Municipal Code because they were not timely signed by the mayor, comptroller, and purchasing agent prior to or on their effective dates. Plaintiff further alleged that HCSC "currently fails to have a valid contract for the provision of its services signed by the mayor, the comptroller, and purchasing agent from December 31, 2018, until the present day." Plaintiff sought the return of all taxpayer funds paid to HCSC by the City.

¶ 14    Count II was brought pursuant to section 2-92-050 of the Chicago Municipal Code, which states:

"No contract shall be binding upon the city, nor shall any work contracted for be commenced, or any materials or supplies be delivered thereunder, until the contract, in the requisite number of copies, has been duly executed." Chicago Municipal Code § 2-92-050 (amended July 19, 2000).

¶ 15    Plaintiff alleged that the mayor, comptroller, and purchasing agent's failure to timely sign the 1994 and 2008 agreements prior to or on their effective dates, as required by section 8-10-10 of the Illinois Municipal Code, means that neither agreement was properly executed and therefore was not binding on the City under section 2-92-050 of the Chicago Municipal Code. Plaintiff also alleged the absence of any signed, duly executed agreement between HCSC and the City from December 31, 2018, to the present day. Accordingly, plaintiff sought recovery of all taxpayer funds paid to HCSC by the City.

¶ 16    Count III alleged that HCSC has negotiated contracts with health care providers pursuant to which the providers share or split their professional fees, styled as a rebate, with HCSC in exchange for being included in HCSC's network of providers. At the end of each year, HCSC performs a "true-up," through which a portion of the rebates that HCSC receives from health care providers are shared with the City. Plaintiff alleged that HCSC's sharing of fees/rebates with health care providers and passing a portion of those rebates onto the City is illegal under the Medical Practice Act, which states:

"[A] licensee under this Act may not divide, share or split a professional service fee with, or otherwise directly or indirectly pay a percentage of the licensee's professional service fees, revenues or profits to anyone for: (i) the marketing or management of the licensee's practice, (ii) including the licensee or the licensee's practice on any preferred provider list, (iii) allowing the licensee to participate in any network of health care providers,

(iv) negotiating fees, charges or terms of service or payment on behalf of the licensee, or (v) including the licensee in a program whereby patients or beneficiaries are provided an incentive to use the services of the licensee." 225 ILCS 60/22.2(f) (West 2020).

¶ 17 Count IV sought a declaratory judgment that "HCSC's sharing of rebates with medical providers and passing those rebates onto the City is unlawful pursuant to the Medical Practice Act of 1987."

¶ 18 Count V alleged that HCSC was unjustly enriched "by being paid taxpayer funds while its agreements with the City were void pursuant to Illinois law" and sought the return of all such funds.

¶ 19 Count VI alleged that HCSC violated the FOIA by requiring the City to maintain the confidentiality of the 1994 and 2008 agreements, thereby rendering those agreements illegal. The City's payment of taxpayer funds to HCSC pursuant to the illegal agreements is in contravention of section 1(b) of article VIII of the Illinois Constitution, which states: "The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance." Ill. Const. 1970, art. VIII, § 1(b). Plaintiff sought the return of all taxpayer funds paid by the City to HCSC, as well as a judgment requiring HCSC to publicly disclose the 1994 and 2008 agreements.

¶ 20 Count VII alleged that the 1994 and 2008 agreements were void *ab initio* for all the reasons stated in counts I through VI.

¶ 21 Count VIII alleged that the 1994 and 2008 agreements violated the so-called "prior appropriations doctrine." Plaintiff pleaded that the amount to be paid a vendor of the City must be specific and identify the vendor and the annual costs of the services provided, and those costs must receive prior appropriations on an annual basis prior to the expenditure of any funds. Where

amounts are paid to a vendor under a contract without a valid appropriation, "the contract is void and any funds paid to that vendor must be returned to the City." Plaintiff further pleaded that the City and HCSC never complied with the prior appropriations doctrine "in that the actual yearly fees taken by HCSC to administer the City's health plan were never fully disclosed and approved prior to the providing of services." Accordingly, plaintiff sought the return of any taxpayer monies paid to HCSC for administration of the Plan under the 1994 and 2008 agreements.

¶ 22    HCSC filed a section 2-619.1 (735 ILCS 5/2-619.1 (West 2020)) motion to dismiss plaintiff's fourth amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure. With respect to the section 2-615 motion, HCSC argued that each of the eight counts failed to state a cause of action.

¶ 23    The section 2-619 motion was targeted at only counts VI and VIII, which had alleged that the City failed to properly authorize the payment of taxpayer funds to HCSC for the administration of the Plan. HCSC argued that the City appropriated the funds in its annual budget ordinances and in support HCSC attached the City's answer to plaintiff's interrogatories, which stated:

> "[T]he City appropriates monies to certain funds from which the City compensates HCSC under the [1994 and 2008 agreements]. These funds include 0029, 0042, 0043, 0052, and 0056. The City's annual appropriations ordinances identify City appropriations to these funds."

¶ 24    The circuit court dismissed all eight counts pursuant to section 2-615 and, additionally, dismissed counts VI and VIII pursuant to section 2-619. Plaintiff appeals.

¶ 25    First we address the dismissal of all eight counts of plaintiff's fourth amended complaint pursuant to section 2-615. A section 2-615 motion challenges the legal sufficiency of the complaint based on defects apparent on its face. *Ledeaux v. Motorola, Inc.*, 2018 IL App (1st) 161345, ¶ 14.

The court accepts as true all well-pleaded facts, as well as any reasonable inferences flowing from those facts. *Id.* Conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930-31 (2004).

¶ 26    The critical inquiry is whether the allegations of the complaint, considered in the light most favorable to plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A court should not dismiss a cause of action under section 2-615 unless the pleadings clearly show that no set of facts can be proven that would entitle plaintiff to recover. *Id.* In ruling on a section 2-615 motion, the court considers only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. Our review of a dismissal is *de novo*. *Id.*

¶ 27    Plaintiff contends that the circuit court erred by dismissing count I of her fourth amended complaint, which alleged that the mayor, comptroller, and purchasing agent's delay in signing the 1994 and 2008 agreements until years after their effective dates violated section 8-10-10 of the Illinois Municipal Code, rendering each of those agreements null and void under section 8-10-21. Plaintiff requests the return of all taxpayer monies that the City paid to HCSC under the void 1994 and 2008 agreements. Defendants counter that, as a home rule entity, the City was authorized to determine its own methods for making and performing its agreements with HCSC, including signing the agreements after their effective dates and giving them retrospective effect, as well as providing for HCSC's continuation of its administration of the Plan after termination of the

agreements. The City was not required to comply with section 8-10-10 of the Illinois Municipal Code.

¶ 28    Section 6(a) of article VII of the Illinois Constitution contains the general grant of home rule power, providing in relevant part: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***." Ill. Const. 1970, art. VII, § 6(a). An exercise of power pertains to the home rule unit's government and affairs when it relates to problems that are local in nature, rather than state or national. *DMS Pharmaceutical Group v. County of Cook*, 345 Ill. App. 3d 430, 439-40 (2003). Section 6(a) was drafted with the intention of giving home rule units the broadest possible powers under the constitution. *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 18. Additionally, section 6(m) states that "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 29    The powers of home rule units are not boundless; under the Illinois Constitution, the legislature retains the authority to restrict the exercise of virtually all home rule powers. *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 927 (1994). Section 6(h) states that the General Assembly may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). Section 6(i) states: "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." *Id.* § 6(i). The General Assembly has codified these principles in section 7 of the Statute of Statutes (5 ILCS 70/7 (West 2020)), which states:

"No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."

¶ 30    In the instant case, the City has a population in excess of 25,000 and therefore is a home rule unit under the Illinois Constitution. See Ill. Const. 1970, art. VII, § 6(a) (defining home rule units as municipalities with populations in excess of 25,000); *Messina v. City of Chicago*, 145 Ill. App. 3d 549, 552 (1986). The City's power to contract with HCSC to administer the Plan is within its home rule authority. See *American Health Care Providers*, 265 Ill. App. 3d at 926 ("the method by which a home rule unit procures its contracts is a matter pertaining to its government and affairs" and thus falls within the general grant of home rule power as set forth in section 6(a) of article VII). Plaintiff has not pleaded that the General Assembly passed any legislation specifically limiting the City's ability to contract for and administer health care coverage for its employees. Absent any such express statutory limitation or preemption, the City was free to exercise its home rule authority in that regard without being bound by the requirements of section 8-10-10 of the Illinois Municipal Code, including signing the contracts after their effective dates and giving them retrospective effect and providing for HCSC's continuation of services in between contracts. Accordingly, count I of plaintiff's fourth amended complaint failed to state a cause of action for the recovery of public funds under the Illinois Municipal Code.

¶ 31    Plaintiff argues, though, that under section 7 of the Statute on Statutes, the requirement that a statute must expressly limit or deny home rule authority in order to restrict the City's exercise of home rule powers only applies to legislation passed "after January 12, 1977" (5 ILCS 70/7 (West

2020)), and that the City must comply with any legislation passed prior thereto. Section 8-10-10 of the Illinois Municipal Code was passed in 1961, and therefore plaintiff contends that the City must comply with its requirements when contracting for the administration of the Plan. Plaintiff's argument fails, as our supreme court has repeatedly held that a home rule unit's exercise of its power supersedes any conflicting pre-1970-Constitution legislation (*Sommer v. Village of Glenview*, 79 Ill. 2d 383, 392 (1980) (and cases cited therein)), which includes section 8-10-10 of the Illinois Municipal Code.

¶ 32    Plaintiff also argues that under section 6 of article VII of the Illinois Constitution, the City's exercise of its home rule powers in this instance is conditioned on its passage of an ordinance overriding section 8-10-10 of the Illinois Municipal Code. Plaintiff argues that the City failed to so exercise its home rule authority by passing the requisite ordinance, meaning that section 8-10-10 of the Illinois Municipal Code remained in effect when the City executed the 1994 and 2008 agreements with HCSC for the administration of the Plan. Plaintiff contends that the City's failure to comply with section 8-10-10 of the Illinois Municipal Code voids the 1994 and 2008 agreements with HCSC and necessitates the return of all taxpayer monies paid by the City to HCSC.

¶ 33    Plaintiff's argument is without merit. When interpreting the 1970 Constitution, we ascertain the plain and ordinary meaning of the relevant constitutional provisions in the constitutional contexts in which they appear. *Cook v. Illinois State Board of Elections*, 2016 IL App (4th) 160160, ¶ 18. We read the constitutional provisions according to the most natural and obvious meaning of the language to avoid eliminating or extending its operation. *Id.* We may not add requirements or impose limitations inconsistent with the provision's plain meaning. *Id.*

¶ 34    On its plain terms, section 6 of article VII does not condition the exercise of home rule authority on the passage of an ordinance, and we decline to add such a requirement to the

-12-

constitutional provision. Our holding is in line with the weight of relevant authority. See *Sommer*, 79 Ill. 2d at 392-93 (exercise of home rule authority did not require the adoption of an ordinance); *Beneficial Development Corp. v. City of Highland Park*, 161 Ill. 2d 321, 330 (1994) (a municipality "need not enact an ordinance to execute its home rule power"); *Station Place Townhouse Condominium Ass'n v. Village of Glenview*, 2022 IL App (1st) 211131, ¶ 39 ("A municipality is not required to enact an ordinance in order to execute its home rule powers.").

¶ 35    The cases cited by plaintiff, *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561 (2000), and *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146 (1995), are factually inapposite. In *City of Belleville* and *Nielsen-Massey*, the respective plaintiffs sought to bind the cities to contracts never formally approved by them. See *Belleville*, 312 Ill. App. 3d at 562 (plaintiff attempted to bind the City of Belleville to an addendum to a police-employee collective bargaining agreement signed by the outgoing mayor after he was defeated for reelection, which he neglected to submit to the city council and for which no appropriation of funds was passed); *Nielsen-Massey*, 276 Ill. App. 3d at 149-50 (plaintiff attempted to bind the City of Waukegan to a loan agreement made by the director of economic development, who had no such authority to agree to the loan). In both cases, the respective cities disavowed the contracts and never performed them. The appellate court held in each case that in the absence of the passage of an ordinance binding the cities to the contracts, they were null and void. *Belleville*, 312 Ill. App. 3d at 566; *Nielsen-Massey*, 276 Ill. App. 3d at 152-53.

¶ 36    In the present case, by contrast, the 1994 and 2008 agreements underwent the City's formal review process and both parties operated under them. Specifically, the City Council passed a resolution in 1986 authorizing the mayor to approve the City health care plan. The mayor issued an executive order establishing a benefits management office and benefits committee within the

Department of Finance to review and evaluate proposals for Plan administration services. The benefits committee evaluated several providers and recommended HCSC as the Plan administrator. The mayor approved of the recommendation, and the City entered into a contractual relationship with HCSC and each side performed its duties under the respective 1994 and 2008 agreements. The City Council has passed annual ordinances appropriating funds and authorizing payments to HCSC to continue the City's group coverage. On these facts, there is no similarity between the present case and *Belleville* and *Nielsen-Massey*.

¶ 37    Next, plaintiff contends that the circuit court erred by dismissing count II of her fourth amended complaint under section 2-92-050 of the Chicago Municipal Code, which states that no contract is binding on the City unless it has been "duly executed." Chicago Municipal Code § 2-92-050 (amended July 19, 2000). Count II alleged that the 1994 and 2008 agreements were not duly executed under section 8-10-10 of the Illinois Municipal Code as they were not timely signed by the mayor, comptroller, and purchasing agent prior to or on their effective dates, and, as such, that they are not binding on the City under section 2-92-050.

¶ 38    Plaintiff's argument is without merit because it is premised on the proposition that the City was bound to follow section 8-10-10 of the Illinois Municipal Code when executing the 1994 and 2008 agreements and that its failure to do so nullifies those agreements under section 2-92-050. However, as we discussed earlier in this opinion, plaintiff did not adequately plead the applicability of section 8-10-10 of the Illinois Municipal Code to a home rule unit such as the City here. As a home rule unit, the City was not required to follow section 8-10-10 of the Illinois Municipal Code in this instance where it passed its own resolution and established its own procedures for executing the 1994 and 2008 agreements, including signing the respective agreements after their effective dates and giving them retrospective effect. The City "duly executed" the agreements pursuant to

the procedures it established in accordance with its home rule authority, and therefore plaintiff failed to state a cause of action for a violation of section 2-92-050.

¶ 39     Next, plaintiff argues that the circuit court erred by dismissing counts III and IV of her fourth amended complaint, which alleged that HCSC's negotiation of reduced fees from its third-party medical providers violated the Medical Practice Act. The Medical Practice Act prohibits "licensees," *i.e.*, physicians, from sharing or splitting their professional fees with HCSC in exchange for being included in HCSC's network of providers.

¶ 40     A party has standing to bring a taxpayer derivative action only to redress an injury or harm to the City. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 500 (2005). Far from redressing any injury to the City, the successful prosecution of counts III and IV of plaintiff's taxpayer derivative action would harm the City by preventing HCSC from negotiating reduced fees from its medical providers and then passing on some or all of those savings to the City. Accordingly, we affirm the dismissal of counts III and IV for lack of standing. See *Mercado v. S&C Electric Co.*, 2023 IL App (1st) 220020, ¶ 25 (we may affirm the circuit court's ruling on any basis in the record, regardless of the court's reasoning).

¶ 41     Even if plaintiff had standing to bring her cause of action, we would affirm the dismissal because plaintiff has failed to specifically plead that the providers with whom HCSC negotiates contracts are licensees subject to the Medical Practice Act. In fact, some of the providers about which plaintiff complains are pharmacists, who are licensed under the Pharmacy Practice Act (225 ILCS 85/1 *et seq.* (West 2020)) and not the Medical Practice Act. Plaintiff's failure to adequately plead the licensure requirement necessitates dismissal of her cause of action.

¶ 42     Next, plaintiff contends that the circuit court erred by dismissing count V of her fourth amended complaint, which alleged that HCSC was unjustly enriched by being paid taxpayer funds

while its 1994 and 2008 agreements with the City were void under sections 8-10-10 and 8-10-21 of the Illinois Municipal Code. As we have discussed, plaintiff failed to adequately plead that the 1994 and 2008 agreements were subject to the requirements of sections 8-10-10 and 8-10-21 of the Illinois Municipal Code. Instead, those agreements were proper exercises of the City's home rule authority and, as such, were valid and enforceable contracts. Unjust enrichment is based on an implied contract and does not apply where, as here, express contracts governed the relationship of the parties. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. Accordingly, count V failed to state a cause of action.

¶ 43   Next, plaintiff contends that the circuit court erred by dismissing count VI of her fourth amended complaint. Count VI pleaded that the 1994 and 2008 agreements are public records that were not made available for inspection as required by section 2.5 of the FOIA, which "implements" section 1(c) of article VIII of the Illinois Constitution. Section 2.5 of the FOIA states: "All records relating to the obligation, receipt, and use of public funds of the State, units of local government, and school districts are public records subject to inspection and copying by the public." 5 ILCS 140/2.5 (West 2020).

¶ 44   Count VI further alleged that HCSC's failure to make the agreements available for public inspection under the FOIA renders them unauthorized by law and invalidates the City's payment of taxpayer funds to HCSC under section 1(b) of article VIII of the Illinois Constitution. Section 1(b) states, "The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance." Ill. Const. 1970, art. VIII, § 1(b).

¶ 45   Plaintiff's argument is premised on the allegation that HCSC is subject to the FOIA and that its failure to comply with the FOIA's disclosure requirements renders the 1994 and 2008

agreements to be "unauthorized." However, a suit for the failure to disclose public records may only be made against a "public body." See *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 23. The FOIA defines "public body" as:

"all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof, and a School Finance Authority created under Article 1E of the School Code." 5 ILCS 140/2 (West 2020).

¶ 46    As a mutual insurance company, HCSC is not a "public body" subject to the FOIA.

¶ 47    Also, a formal request for public records is a prerequisite to bringing a suit under the FOIA. See *id.* § 3(b); *Ballew v. Chicago Police Department*, 2022 IL App (1st) 210715, ¶ 17. Plaintiff does not allege that she ever made a request for public records and thus her claim, premised as it is on a violation of the FOIA, fails to state a cause of action.

¶ 48    Next, plaintiff argues that the circuit court erred by dismissing count VIII,[1] which alleged that HCSC and the City failed to comply with the so-called "prior appropriations doctrine." Specifically, plaintiff pleaded that the prior appropriations doctrine was violated by the City's failure to identify HCSC, as well as the annual cost of HCSC's services, in its annual appropriations ordinances and by its failure to fully disclose and approve HCSC's fees before HCSC began performing under the 1994 and 2008 agreements.

---

[1]Plaintiff makes no argument that the circuit court erred by dismissing count VII and accordingly has forfeited any review thereof. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 49    Plaintiff cited no statutory provisions or constitutional law in support of her invocation of the prior appropriations doctrine in count VIII and thus she failed to reasonably inform defendants of the nature of the claim that they were called upon to meet. Accordingly, dismissal under section 2-615 was appropriate. See *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943 (1995).

¶ 50    For the first time on appeal, plaintiff invokes section 1(b) of article VIII of the Illinois Constitution (Ill. Const. 1970, art. VIII, § 1(b)) and section 8-1-7 of the Illinois Municipal Code (65 ILCS 5/8-1-7 (West 2020)) in support of her claim that defendants violated the prior appropriations doctrine. Section 1(b) of article VIII requires that units of local government shall make payments from public funds "only as authorized by law." Ill. Const. 1970, art. VIII, § 1(b). Section 8-1-7 of the Illinois Municipal Code provides that a municipality shall incur no expense unless "an appropriation has been previously made concerning" that expense. 65 ILCS 5/8-1-7(a) (West 2020). Plaintiff's fourth amended complaint references section 1(b) of article VIII only in passing in a single paragraph in count VI, unrelated to any invocation of the prior appropriations doctrine, and it never cites or references section 8-1-7 of the Illinois Municipal Code. As plaintiff's fourth amended complaint did not allege her theory that defendants violated the prior appropriations doctrine by failing to comply with section 1(b) of article VIII of the Illinois Constitution and with section 8-1-7 of the Illinois Municipal Code, she forfeited review thereof. See *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 170 (2002) (a party forfeits review of a theory not contained in the complaint).

¶ 51    Further, as discussed earlier in this opinion, the City's power to contract with HCSC to administer the Plan is within its home rule authority. Plaintiff has not pleaded that the General Assembly passed any legislation specifically limiting the City's ability to contract for and administer health care coverage for its employees. Absent any such express statutory limitation or

preemption, the City was free to exercise its home rule authority in that regard without being bound by the requirements of section 8-1-7 of the Illinois Municipal Code. See *City of Burbank v. Illinois State Labor Relations Board*, 185 Ill. App. 3d 997, 1004-05 (1989). Thus, plaintiff's argument that she stated a claim under section 8-1-7 fails as a matter of law, and we affirm the dismissal of count VIII under section 2-615.

¶ 52    In the alternative, even if count VIII *had* stated a cause of action for violation of the prior appropriations doctrine, we would affirm the circuit court's dismissal of it under section 2-619. A section 2-619 motion asserts affirmative matter outside the complaint that defeats the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). Once defendant satisfies its burden of going forward on the section 2-619 motion by presenting affirmative matter in support thereof, the burden shifts to plaintiff, who must show that the affirmative defense is unfounded or requires resolution of an essential element of material fact. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). Plaintiff may establish this by presenting " 'affidavits or other proof.' " *Id.* (quoting 735 ILCS 5/2-619(c) (West 1992)).

¶ 53    In its section 2-619 motion, HCSC argued that contrary to plaintiff's allegations in count VIII, all payments that the City made to HCSC were authorized in its annual budget as part of its appropriation for employee health care. In support, HCSC attached the City's answer to plaintiff's interrogatories, in which the City explained how its annual appropriations ordinances appropriate monies to specific funds that are used to pay HCSC for its administration of the Plan. As HCSC satisfied its initial burden of going forward on the section 2-619 motion to dismiss, the burden then shifted to plaintiff to present affidavits or other proof showing that the affirmative defense was unfounded or required the resolution of an essential element of material fact. Plaintiff failed to

present any such evidence. Accordingly, we affirm the circuit court's section 2-619 dismissal of count VIII.

¶ 54    Next, plaintiff argues that the circuit court erred by denying her motion for partial summary judgment on counts I and II of her third amended complaint. Defendants argue that we lack jurisdiction to consider this issue because the denial of a summary judgment motion generally is not final and appealable. See *In re Estate of Funk*, 221 Ill. 2d 30, 85 (2006). Defendants also argue that plaintiff abandoned any claim of error by filing the fourth amended complaint and failing to renew the summary judgment motion. See *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 29 (a party who files an amended pleading forfeits any objections to the circuit court's ruling on prior complaints). Plaintiff counters that in *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶¶ 117-20, our supreme court found that it had jurisdiction to consider the denial of defendant's motion for summary judgment on the first amended complaint, where the subsequent dismissal order of the third amended complaint was final and appealable and no trial or hearing had been conducted.

¶ 55    Given that the procedural posture of the instant case is similar to *Clark*, we agree with plaintiff that the denial of the summary judgment motion may be reviewed on appeal. However, the arguments plaintiff makes for reversal of the summary judgment order are the same as the ones she makes for reversal of the dismissal order. For the reasons already discussed, we reject plaintiff's arguments and affirm the denial of the summary judgment motion.

¶ 56    For all the foregoing reasons, we affirm the circuit court. As a result of our disposition of this case, we need not address defendants' other arguments on appeal.

¶ 57    Affirmed.

*Harper v. Health Care Service Corp.*, 2023 IL App (1st) 220078

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-010842; the Hon. Patrick J. Sherlock, Judge, presiding. |
| **Attorneys for Appellant:** | Stephen W. Heil, of Cray Huber Horstman Heil & VanAusdal LLC, of Chicago, and Iana A. Vladimirova and Scott Helfand, of Husch Blackwell LLP, of Madison, Wisconsin, for appellant. |
| **Attorneys for Appellee:** | Steven F. Molo, Megan Cunniff Church, and Pamela I. Yaacoub, of MoloLamken LLP, of Chicago, for appellee Health Care Service Corporation. |
| | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne Loose, Alexandra Weiss, and Tara D. Kennedy, Assistant Corporation Counsel, of counsel), for other appellee. |