(No. 44889.—

KIRIAKOS KANELLOS, Appellant, v. THE COUNTY OF COOK *et al.*, Appellees.

*Opinion filed November 30, 1972.*

PRICE, CUSHMAN, KECK & MAHIN, of Chicago (ROBERT S. CUSHMAN and THOMAS E. BRANNIGAN, of counsel), for appellant.

EDWARD V. HANRAHAN, State's Attorney, of Chicago (VINCENT BENTIVENGA, JR., Chief of the Civil Division, and PAUL P. BIEBEL, JR., Assistant State's Attorney, of counsel), for appellees.

RICHARD L. CURRY, Corporation Counsel, of Chicago (WILLIAM R. QUINLAN and RICHARD F. FRIEDMAN, Assistants Corporation Counsel, of counsel), for *amicus curiae*, the City of Chicago.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal under Rule 302(b) (Ill.Rev.Stat. 1971, ch. 110A, par. 302(b)) from the judgment of the circuit court of Cook County holding "*** no prior referendum is required as a condition precedent, before Counties under the 'home rule' provisions of Illinois' new Constitution [1970], may issue general obligation bonds ***."

On August 20, 1971, the Cook County Board unanimously adopted a resolution providing for the issuance of $10,000,000 in general obligation bonds without prior referendum approval of the voters of Cook County.

The plaintiff, Kiriakos Kanellos, a citizen and taxpayer of Cook County, purporting to represent himself as well as other citizens and taxpayers of Cook County, filed this action against the defendants, County of Cook, the County Board of Commissioners, its president and the county clerk. The action sought to enjoin the issuance of the bonds in that said issuance without prior referendum approval was contrary to law. The case was taken upon the plaintiff's motion for summary judgment and a cross motion for summary judgment on behalf of the defendants. The final decree denied plaintiff's motion for summary judgment and granted defendants' cross motion. This appeal is from that order.

Section 6 of article VII of the constitution of the State of Illinois of 1970 defines home-rule units and delineates the powers and restrictions thereof. The salient provisions in relation to this cause are as follows:

> "(a) A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units. Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government

and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

\* \* \*

(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (l) of this section.

\* \* \*

(j) The General Assembly may limit by law the amount of debt which home rule counties may incur and may limit by law approved by three-fifths of the members elected to each house the amount of debt, other than debt payable from ad valorem property tax receipts, which home rule municipalities may incur.

(k) The General Assembly may limit by law the amount and require referendum approval of debt to be incurred by home rule municipalities, payable from ad valorem property tax receipts, only in excess of the following percentages of the assessed value of its taxable property: (1) if its population is 500,000 or more, an aggregate of three percent; (2) if its population is more than 25,000 and less than 500,000, an aggregate of one percent; and (3) if its population is 25,000 or less, an aggregate of one-half percent. Indebtedness which is outstanding on the effective date of this Constitution or which is thereafter approved by referendum or assumed from another unit of local government shall not be included in the foregoing percentage amounts."

The plaintiff argues that the resolution providing for the issuance of the $10,000,000 in general obligation bonds without prior referendum approval of the voters of Cook County is invalid for the reason that section 6(j) provides that "the General Assembly may limit by law the amount of debt which home rule counties may incur \*\*\*"; that section 9 of the General Transition Schedule of the constitution of 1970 further provides: "All laws, ordinances, regulations and rules of court not contrary to, or inconsistent, with the provisions of the Constitution shall

remain in force ***"; and that section 40 of the Counties Act (Ill.Rev.Stat. 1969, ch. 34, par. 306) requires a referendum for the issuance of the bonds in question.

In essence plaintiff contends that section 6(j) authorizes the General Assembly to impose a referendum, and a pre-1970 Constitution statute requiring such a referendum is in full force and effect.

The defendants argue that section 6(a) of article VII of the constitution of 1970 specifically authorizes a home-rule county, except as limited by said section, "to incur debt"; that no referendum is required nor authorized by section 6(j), but rather that the authorized limitation therein is applicable only to the amount of debt and not to a referendum. Defendants conclude, therefore, that the statute (Ill.Rev.Stat. 1969, ch. 34, par. 306) is inapplicable regardless of section 9 of the Transition Schedule, for the General Assembly is not authorized by the constitution to require any referendum for the issuance of bonds by a home-rule county.

The issues are whether a referendum is required as a condition precedent to a home-rule county's issuance of general obligation bonds; and whether the preconstitutional statutory requirement imposing such referendum upon counties (section 40 of the Counties Act) is in full force and effect because of section 9 of the Transition Schedule of the constitution of 1970.

A home-rule county such as Cook County, which has a chief executive officer elected by the electors of the county, is specifically empowered to incur debt under section 6(a). Such power thereunder, however, is limited pursuant to certain other provisions of section 6 of article VII.

The language of section 6(j) as applied to home-rule counties is unambiguous (*People ex rel. Keenan v. McGuane, 13 Ill.2d 520, 527*), and the records of the convention provide no persuasive basis for not giving it effect. Section 6(j) authorizes the General Assembly to

limit by law only the amount of debt which a home-rule county may incur and does not pertain to a referendum. It is therefore inapplicable.

This conclusion is further supported by examination of section 6(k) of article VII. This provision explicitly provides that the General Assembly may impose a referendum requirement by law upon a home-rule municipality prior to this unit's incurring debt payable from *ad valorem* property taxes. If the convention intended to allow the General Assembly by majority approval to impose a referendum requirement upon a home-rule county, it would have been a simple procedure to specifically include such provision in section 6(j) as was accomplished for home-rule municipalities in section 6(k).

We do not agree with defendants' contention, however, that failure to include counties in the referendum requirement of sections 6(j) and 6(k) precludes the General Assembly from imposing such restriction. The official explanation sent to the voters prior to ratification of the 1970 constitution (P.A. 76-40, sec. 13, Laws of 1969, vol. 1, p. 65) stated in pertinent part: "Home Rule counties may incur debt subject to limitation or referendum requirements imposed by the General Assembly." An examination of the debates and committee proposals of the constitutional convention discloses that initially it was the intent of the convention delegates to grant to the General Assembly authority to impose referendum restrictions upon a home-rule county.

We therefore find that section 6(g) of article VII is the provision that expresses this intent and is determinative of this cause. It provides in part, "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit *** any other power or function of a home rule unit not exercised or performed by the State ***." The power of a home-rule county to incur debt is singularly of local concern and has not been exercised or performed by the State. It is not

susceptible to legislative restraint unless such limitation is expressly delineated in the constitution or effectuated in accordance therewith.

The question remains whether the pre-1970-constitution statute (section 40 of the Counties Act), which imposed a referendum requirement on counties, is valid in view of section 9 of the Transition Schedule of the 1970 constitution. This section provides, "The rights and duties of all public bodies shall remain as if this Constitution had not been adopted with the exception of such changes as are contained in this Constitution. All laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force, until they shall expire by their own limitation or shall be altered or repealed pursuant to this Constitution. ***"

The concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between local and State government. Formerly, the actions of local governmental units were limited to those powers which were expressly authorized, implied or essential in carrying out the legislature's grant of authority. Under the home-rule provisions of the 1970 constitution, however, the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs. To accomplish this independence the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein.

We therefore hold that this statute is inapplicable as applied to a home-rule county. It was enacted prior to and not in anticipation of the constitution of 1970 which introduced the concepts of home rule and the related limitation of sections 6(g) and 6(h). Such considerations were totally foreign in the contemplation of legislation

adopted prior to the 1970 constitution. The statute is therefore inconsistent with the provisions of section 6(g) and the Transition Schedule. (See Helman and Whalen, Constitutional Commentary, S.H.A. Const. of 1970, art. VII, sec. 6, p. 26.) While a referendum requirement may be imposed upon a home-rule county to regulate a "power or function not exercised or performed by the State," such restriction must be specifically enacted by the General Assembly with the requisite legislative majority.

For the reasons herein expressed the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*