(No. 52304.—)

BERNARD I. SOMMER et al., Appellants, v. THE VIL-
LAGE OF GLENVIEW et al., Appellees.

*Opinion filed March 28, 1980.*

Joseph A. Morris, of Chicago (Rothschild, Barry & Myers, of counsel), for appellants.

Zachary D. Ford, of Glenview, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

The plaintiffs, Bernard I. Sommer, Mary Jane Lee and Julia S. Sommer, filed a complaint for a declaratory judgment and a petition for a writ of *mandamus* in the circuit court of Cook County on March 23, 1979. The relief sought by the plaintiffs was, *inter alia*, a writ of *mandamus* commanding the defendants, the village of Glenview, the board of trustees, the village clerk and the village manager, to present a proposition to the voters of the village which, if passed, would lower the maximum property tax rate applicable to the next taxes to be extended. The plaintiffs also requested the court to enter a judgment declaring that section 162a of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 643a) created a duty on the part of the defendants to present the tax-rate proposition to the voters of the village. The plaintiffs and defendants filed motions for summary judgment. The circuit court, after a hearing, dismissed the plaintiffs' petition for a writ of

*mandamus*, granted the defendants' motion for summary judgment, denied the plaintiffs' motion for summary judgment, and entered judgment for the defendants. The plaintiffs filed a notice of appeal directly to this court under Rule 302(a) (73 Ill. 2d R. 302(a)). The defendants thereafter filed a motion with this court to dismiss the appeal or to transfer the cause to the appellate court. The plaintiffs filed a response asking the court to permit the appeal under Rule 302(a), or, in the alternative, as a matter in which the public interest requires prompt adjudication, pursuant to Rule 302(b) (73 Ill. 2d R. 302(b)). We have taken the motion to dismiss under advisement with this appeal.

There are no disputed questions of fact. The village is a home rule unit under the terms of article VII, section 6, of the 1970 Constitution. On March 16, 1979, more than 30 days prior to the next general election in the village, petitions bearing the signatures of 1,349 duly qualified voters were filed with the village clerk. The petitions requested the village's governing board to present to the voters at the next general election to be held on April 17, 1979, the following question:

> "Shall the maximum tax rate for the general corporate fund of the Village of Glenview, Illinois, be established at .4337 percent on the equalized assessed value instead of .5783 percent, the maximum rate otherwise applicable to the next taxes to be extended?"

At a meeting of the village board held March 19, 1979, the trustees voted not to place the referendum proposition on the ballot for the general election to be conducted on April 17, 1979.

The first question we consider is whether the appeal is properly brought under Rule 302(a). Rule 302(a) states:

> "Rule 302. Direct Appeals to the Supreme Court
> (a) Cases Directly Appealable. Appeals from final judgments of circuit courts shall be taken directly to the Supreme Court (1) in cases in which a statute of the United

States or of this State has been held invalid,***." (73 Ill. 2d R. 302(a).)

The defendants assert that the circuit court, in holding section 162a to be inapplicable to home rule units of government, did not decide its constitutionality. We do not agree. At the hearing on the motions for summary judgment, the circuit court stated that the section "constitutes an impermissible limitation on the powers to tax delegated to the local Home Rule municipalities by the 1970 Constitution." The court's order repeated the conclusion that section 162a constituted "an impermissible limitation on the constitutional powers of the Village of Glenview to tax as delegated to home rule municipalities by the 1970 Constitution" and added, "said Village is not bound by said section." We think the foregoing signifies that the trial court held that section 162a, as applied to a home rule unit, is unconstitutional. In *Garcia v. Tully* (1978), 72 Ill. 2d 1, 7, in an analogous setting, we said:

"[I] t appears from the opinion and order of the circuit court that the order dissolving the injunction rests upon the finding that section 104 of the Revenue Act of 1939 is unconstitutional. Under these circumstances, direct appeal under Rule 302(a) is appropriate, and defendants' motion to dismiss the appeal is denied." (72 Ill. 2d 1, 7.)

By holding section 162a inapplicable to home rule units the circuit court necessarily based its decision on the ground that there is a conflict between that section and the powers granted to home rule units under the 1970 Constitution. The motion to dismiss the appeal is denied.

The next inquiry is whether section 162a of the Revenue Act of 1939, as applied to home rule units, is unconstitutional. Section 162a provides in pertinent part:

"(2) The question of establishing a tax rate limit

either higher or lower than that otherwise applicable to the next taxes to be extended may be presented to the legal voters of any taxing district at any time by the corporate authorities of the taxing district on their own motion at any regular election or at any special election called for that purpose. The question of establishing a tax rate limit lower than that otherwise applicable shall be presented to the voters of any taxing district upon the receipt by such corporate authorities, not less than 30 days before the next regular election for officers of such taxing district of a petition signed by not fewer than 5% of the legal voters in such taxing district, which percentage shall be determined on the basis of the number of votes cast at the last general election preceding the filing of such petition or 1,000 legal voters in such taxing district whichever is less, specifying the tax rate to be submitted; and such proposition shall be submitted to the voters at the next regular election for officers for such taxing district; provided that if no such election is required to be held at intervals of not more than 2 years, such proposition shall be submitted as a special election to be called by the corporate authorities of such district, which election shall be set for a day not less than 90 days nor more than 120 days following the filing of such petition. In case no general election is held in such a taxing district, such petition shall be signed by not fewer than 5% of the registered voters in such district or 1000 such registered voters, whichever is less.

\*\*\*

If a majority of all ballots cast on such proposition shall be in favor of the proposition, the tax rate limit so established shall become effective with the levy next following the election and it shall be the duty of the county clerk to reduce, if necessary, the amount of any taxes levied thererafter, in such a manner as to give effect to the rate limit so established unless and until the rate so established is changed as provided by law; provided that nothing in this Section shall be construed as precluding the extension of taxes at rates less than that authorized by such election. Provided, further, that the proposition to authorize either a higher or lower tax rate limitation than that otherwise applicable may, in the discretion of the corporate authorities, when acting on their own motion, or the peti-

tioners requesting a vote on such proposition, be restricted in effect to the tax levy of a given year or series of years, the rate limitation thereafter to revert to that applicable at the time of the referendum. If more than one proposition shall be submitted for any one fund of any taxing district of any one election and majority of votes cast on any one or more of such propositions shall be in favor thereof, only the tax rate limit authorized in the proposition receiving the highest number of favorable votes shall become effective; provided that propositions to establish tax rate limits either higher or lower than those otherwise applicable shall not be submitted more often than once in any one year.

No proposition to increase or decrease a tax rate limit under the referendum provisions of this subsection (2), and where there is no other applicable statute for an increase or decrease in a tax rate limit by referendum or otherwise, shall increase or decrease such tax rate limit in effect on the date of the referendum by more than 25%." (Ill. Rev. Stat. 1977, ch. 120, par. 643a.)

There have been two minor amendments to this section since 1939, one of which was passed subsequent to the adoption of the 1970 Constitution. These amendments, however, did not alter the substance of the statute. The post-Constitution change, though passed by a three-fifths majority in each house of the General Assembly, could in no way be considered to be an express restriction of home rule powers. (See *Rozner v. Korshak* (1973), 55 Ill. 2d 430, 435.) Therefore we must view section 162a as legislation existing prior to the adoption of the 1970 Constitution. Article VII, section 6(a), of the 1970 Constitution provides in part: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *** to tax ***." The plaintiffs argue that section 162a does not conflict with home rule taxing powers because it merely authorizes a popular, not a legislative, check on home rule powers, in the form of a referendum. In *Kanellos v.*

*County of Cook* (1972), 53 Ill. 2d 161, an analogous issue was presented. The Cook County Board adopted a resolution providing for the issuance of $10 million in general obligation bonds without prior referendum approval of the voters of Cook County. The plaintiff therein argued that a referendum was required as a condition precedent under both a constitutional provision and a preexisting statute. This court held that the Constitution did not require a referendum for the issuance of bonds by a home rule county. (53 Ill. 2d 161, 165.) The court also held that the pre-Constitution statute, which imposed a referendum requirement on counties, conflicted with section 9 of the Transition Schedule of the 1970 Constitution. Section 9 states in part: "All laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of [the 1970] Constitution shall remain in force, until they shall expire by their own limitation or shall be altered or repealed pursuant to [the 1970] Constitution." Ill. Const. 1970 Transition Schedule sec. 9.

The court went on to explain why the statute did not apply to home rule units:

"The concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between local and State government. Formerly, the actions of local governmental units were limited to those powers which were expressly authorized, implied or essential in carrying out the legislature's grant of authority. Under the home-rule provisions of the 1970 constitution, however, the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs. To accomplish

this independence the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein.

We therefore hold that this statute is inapplicable as applied to a home-rule county. It was enacted prior to and not in anticipation of the constitution of 1970 which introduced the concepts of home rule and the related limitation of sections 6(g) and 6(h). Such considerations were totally foreign in the contemplation of legislation adopted prior to the 1970 constitution. The statute is therefore inconsistent with the provisions of section 6(g) and the Transition Schedule. (See Helman and Whalen, Constitutional Commentary, S.H.A. Const. of 1970, art. VII, sec. 6, p. 26.) While a referendum requirement may be imposed upon a home-rule county to regulate a 'power or function not exercised or performed by the State,' such restriction must be specifically enacted by the General Assembly with the requisite legislative majority." (53 Ill. 2d 161, 166-67.)

The plaintiffs argue that since the court in *Kanellos* held that a pre-1970 statutory referendum requirement was an inapplicable condition precedent to the issuance of bonds by home rule units, *Kanellos* represents a distinguishable situation from the instant case. In *Kanellos*, continues the argument, a referendum constituted a limitation on home rule power, whereas in the instant case a referendum merely gauges the popular will to lower taxes and is not a self-executing restraint or limitation on the home rule unit's power to tax. This argument must fail, however, when it is considered that the language of section 162a commands that "[t]he question of establishing a tax rate limit lower than that otherwise applicable *shall be* presented to the voters of any taxing district upon the

receipt by such corporate authorities, not less than 30 days before the next regular election," of petitions containing the requisite number of signatures. (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 120, par. 643a(2).) Thus, while a referendum is not required before a home rule unit may lower the tax rate limit, once the formal requirements are met, as here, the statute does require that a referendum be conducted. We hold, therefore, that section 162a is an unconstitutional limitation on home rule units.

The plaintiffs' argument that a referendum provides a popular, and not a legislative, check upon a home rule unit's taxing power is not entirely incorrect. It should be emphasized that our holding is not a restraint upon the constitutionally guaranteed right of the people "to make known their opinions to their representatives ***." (Ill. Const. 1970, art. I, sec. 5.) Our holding is simply that this statute, as the trial court stated, "constitutes an impermissible limitation of the powers to tax delegated to the local Home Rule municipalities by the 1970 Constitution." The home rule units themselves are of course free to adopt ordinances authorizing referenda to adjust tax rate limits. Also, the General Assembly in the exercise of its power to pass laws by a three-fifths majority in each house, denying or limiting the power to tax of a home rule unit (Ill. Const. 1970, art. VII, sec. 6(g)), may pass legislation authorizing referenda to lower or raise tax rate limits of home rule units. Indeed, section 28—4 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 28—4) sets forth the appropriate procedure for referenda which are required under article VII of the 1970 Constitution. Since the instant proposal for action to lower tax rate limits is not required by article VII of the 1970 Constitution, section 28—4 does not apply to this case. (See *Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 136.) For the reason that it was passed prior to the adoption of the 1970 Constitution and restricts and limits home rule taxing powers,

neither does section 162a.

An additional reason in support of our holding that section 162a is inapplicable to home rule units is the fact that section 162a contains the following limitation:

> "No proposition to increase or decrease a tax rate limit under the referendum provisions of this subsection (2), and where there is no other applicable statute for an increase or decrease in a tax rate limit by referendum or otherwise, shall increase or decrease such tax rate limit in effect on the date of the referendum by more than 25%."
> (Ill. Rev. Stat. 1977, ch. 120, par. 643a(2).)

The foregoing provision places a limit on the power of the voters of the home rule unit to raise or lower their tax rates by referendum. Clearly, this provision constitutes a limitation on a home rule unit's power to tax as its electorate sees fit, and therefore creates an additional conflict with article VII, section 6, of the Constitution.

The plaintiffs' final contention is that section 162a has not been superseded by any exercise of home rule powers because no ordinance has been adopted purporting to abolish the referendum precedure or explicitly to insulate the village's tax rate from section 162a. We have repeatedly held that "a home rule unit's exercise of its power will supercede any conflicting pre-1970-Constitution legislation." (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 513; *City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 340; *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 18; *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527; *Paglini v. Police Board* (1975), 61 Ill. 2d 233, 235; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550; *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 147; *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, 53-54; *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, 565-66; *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166-67.) We have not, however, precisely defined what constitutes an "exercise" of home rule power. In

the instant case, while no ordinance was adopted refusing to place the proposition on the ballot, the village trustees did vote not to place the proposition on the referendum ballot. We think the plaintiffs argue for an overly technical interpretation of the term "exercise" when they insist that the adoption of an ordinance is a superseding exercise of home rule power while a vote at a trustees' meeting is not. They are both acts taken by the governing board of a home rule unit, as an assertion of autonomy and independence from State control granted by article VII, section 6, of the 1970 Constitution. (See *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273.) We are mindful of the late Professor David Baum's comment that "preexisting statutes should remain as limitations on the actions of a home rule unit, at least until some contrary legislation is adopted by the governing body of the unit." (Baum, *A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict,* 1972 U. Ill. L.F. 559, 577.) However, we do not think the professor's statement was meant to apply in a case where, while there is no contrary legislation, there is certainly a conflict between the home rule unit's power of self-government and a State statute. Thus, we think that the trustees' vote not to place the proposition on the ballot did constitute an exercise of home rule power sufficient to evince that section 162a was superseded.

Accordingly, for the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*