2024 IL App (1st) 221530

No. 1-22-1530

Opinion filed June 7, 2024

Fifth Division

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

PROVEN BUSINESS SYSTEMS, LLC,

  Plaintiff-Appellant,

  v.

THE VILLAGE OF OAK LAWN and THOMAS
PHELAN,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the
Circuit Court of
Cook County.

No. 22L002363

Honorable
Mary Colleen Roberts,
Judge Presiding.

JUSTICE LYLE delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1  Defendants, Village of Oak Lawn (Oak Lawn) and Village Manager Thomas Phelan (collectively, the Oak Lawn Defendants), entered into a contract with plaintiff, Proven Business Systems, LLC (Proven), for the provision of information technology services. The agreement provided for a 60-month term and was approved by a resolution adopted by Oak Lawn's board of trustees. Three months after entering into the contract, Mr. Phelan informed Proven that the agreement was not working out and terminated it.

¶ 2    Proven filed this action for wrongful termination of contract by Oak Lawn and tortious interference with contract against Mr. Phelan seeking damages in excess of $800,000. The Oak Lawn Defendants filed a motion to dismiss Proven's complaint contending that the contract was void *ab initio* because the 60-month term violated the limitations of section 8-1-7(b) of the Illinois Municipal Code (65 ILCS 5/8-1-7(b) (West 2020)), which provides that a municipality may not enter into a contract term that exceeds the length of the term of the mayor or president holding office at the time the contract is executed. Proven contended that the limitations of the Municipal Code did not apply in this case because Oak Lawn, as a home rule unit, could supersede the Municipal Code, which it did through the adoption of the resolution. The circuit court agreed with the Oak Lawn Defendants that the contract was void *ab initio* as contrary to the Municipal Code, holding that Oak Lawn could supersede the Municipal Code only through the adoption of an ordinance, which did not occur in this case.

¶ 3    On appeal, Proven contends that the circuit court erred in granting the Oak Lawn Defendants' motion to dismiss because the unanimous vote of Oak Lawn's board of trustees to adopt the resolution was sufficient to supersede section 8-1-7(b) of the Municipal Code. Proven maintains that the circuit court erred in misinterpreting relevant case law and in construing the pleadings in a light most favorable to Oak Lawn, rather than Proven. In the alternative, Proven asserts that Oak Lawn should be estopped from denying the validity of the agreement where Oak Lawn actively solicited and negotiated the agreement that was unanimously approved by Oak Lawn's board. For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 4                                I. BACKGROUND

¶ 5    In its complaint, Proven alleged on April 27, 2021, it entered into a managed network services agreement with Oak Lawn whereby Proven would provide information technology services to Oak Lawn (Agreement). The Agreement had a term of 60 months. The Agreement was approved by a unanimous vote of Oak Lawn's board of trustees in resolution No. 21-08-29 titled "A Resolution Authorizing the Execution of an IT Service Agreement with Proven Business Systems" (Resolution). After paying the monthly fee for the first three months, Mr. Phelan informed Proven that the Agreement was not "working out." Following this, Oak Lawn refused to communicate with Proven and prohibited Proven from providing the agreed-upon services to Oak Lawn.

¶ 6    In count I of its complaint, Proven raised a claim for wrongful termination of contract by Oak Lawn. Proven asserted that under the terms of the Agreement, either party could terminate the agreement for cause upon written notice to the other party of a material breach of the contract. Proven maintained that it had not materially breached the Agreement, nor did Oak Lawn notify it of any breach before terminating the Agreement. Proven asserted that Oak Lawn therefore wrongfully terminated the Agreement and that Proven was entitled to lost revenue on the balance of the contract term.

¶ 7    In count II, Proven raised a claim for tortious interference with contract against Mr. Phelan. Proven contended that Mr. Phelan was aware of the Agreement and regularly communicated with Proven regarding the work being performed pursuant to the Agreement. Proven alleged that Mr. Phelan acted without the authority or consent of the Oak Lawn president or board of trustees when he unilaterally terminated the Agreement. Proven contended that, as acting Village Manager, Mr. Phelan induced Oak Lawn to wrongfully terminate the Agreement for the purpose of harming Proven.

¶ 8    The Oak Lawn Defendants filed a motion to dismiss Proven's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2022)). The Oak Lawn Defendants argued that the Agreement was void *ab initio* because it exceeded the term of office of the Oak Lawn president. The Oak Lawn Defendants pointed out that section 8-1-7(b) of the Municipal Code prohibits municipalities from entering into a contract that exceeds the term of the president holding office at the time the contract is executed. 65 ILCS 5/8-1-7(b) (West 2020). The Oak Lawn Defendants maintained that at the time the Agreement was approved on April 27, 2021, Sandra Bury was the president holding office. However, Terry Vorderer won the April 6, 2021, consolidated election to become Oak Lawn's president in May 2021.

¶ 9    The Oak Lawn Defendants maintained that the 60-month term of the Agreement therefore exceeded the term of Ms. Bury's presidency and even exceeded the four-year term of Mr. Vorderer's presidency. The Oak Lawn Defendants asserted that the Oak Lawn board lacked the statutory authority to enter into the Agreement, rendering it void *ab initio*. The Oak Lawn Defendants contended that in such cases, the municipality may avoid enforcement of the contract even if the other party has performed satisfactorily. They maintained that Proven could not argue for equitable estoppel in this case because Proven was charged with the knowledge that the Agreement exceeded Oak Lawn's authority. The Oak Lawn Defendants asserted that Proven's claim for tortious interference with contract must also fail because there was no legally enforceable contract. The Oak Lawn Defendants asked the court to dismiss Proven's complaint in its entirety.

¶ 10    In response, Proven contended that the Agreement was not void *ab initio* because Oak Lawn is a home rule unit and therefore was not bound by the limitations of the Municipal Code. Proven pointed out that in passing the Resolution that authorized the Agreement, Oak Lawn provided that it was exercising its home rule powers. Specifically, the Resolution stated:

"WHEREAS, Section 6(a) of Article VII of the 1970 Constitution of the State of Illinois provides that any municipality which has a population of more than 25,000 is a *home rule unit*, and Oak Lawn of Oak Lawn, Cook County, Illinois, with a population in excess of 25,000 is, therefore, *a home rule unit* and, pursuant to the provisions of said Section 6(a) of Article VII, may exercise any power and perform any function pertaining to its government and affairs, including, but not limited to, the power to tax and to incur debt; \*\*\*

NOW, THEREFORE, BE IT RESOLVED BY OAK LAWN PRESIDENT AND BOARD OF TRUSTEES OF OAK LAWN OF OAK LAWN, COOK COUNTY, ILLINOIS, *IN THE EXERCISE OF ITS HOME RULE POWERS*, AS FOLLOWS:

SECTION I: The foregoing recitals shall be and are hereby incorporated as findings of fact as if said recitals were fully set forth herein.

SECTION 2: The President and Board of Trustees of Oak Lawn of Oak Lawn hereby approve the Proven Business Systems MNS Agreement, substantially in the form attached hereto as Exhibit l; and Oak Lawn President and/or Village Manager are hereby authorized to execute said Master Attachment Agreement, subject to review and revision as to form by Oak Lawn Attorney.

SECTION 3: Any policy, resolution or ordinance of Oak Lawn that conflicts with the provisions of this Resolution shall be and is hereby repealed to the extent of such conflict.

SECTION 4: This Resolution shall be in full force and effect from and after its passage and approval in the manner provided by law." (Emphases added.)

Proven maintained that once a municipality exercises its home rule power to enter into an agreement, it cannot rely on section 8-1-7 of the Municipal Code to excuse a breach of the agreement.

¶ 11    Proven asserted that a home rule unit may exercise its home rule authority through the actions of city council members and other city officials. Proven cited this court's decision in *City of Burbank v. Illinois State Labor Relations Board*, 185 Ill. App. 3d 997 (1989) where this court found that Burbank exercised its home rule authority by approving a settlement agreement where members of the city council and the mayor were involved in settlement negotiations, despite the fact that a majority of the city council did not vote to approve the agreement. Proven contended that like in *City of Burbank*, Oak Lawn attorneys and staff were directly involved in conversations and negotiations with Proven. Oak Lawn left no doubt that the Resolution was an exercise of its home rule authority where it explicitly stated as much in the Resolution. Proven maintained that it was irrelevant that Oak Lawn exercised its home rule authority through a resolution rather than an ordinance. Proven also pointed out that the current Village President—Mr. Vorderer—and the current Village Manager—Mr. Phelan—were among Oak Lawn board members who voted to approve the resolution, and that Mr. Vorderer had been elected the next Oak Lawn president on April 6, 2021, before the Agreement was executed. Proven asserted that the Municipal Code's concerns about previous administrations tying the hands of future administrations through contracts that exceeded their term in office were not present here.

¶ 12    Finally, Proven contended that Oak Lawn was estopped from relying on the Municipal Code to invalidate the agreement where it solicited Proven's services and Proven reasonably relied on Oak Lawn's representations in entering into the Agreement.

¶ 13     In reply, the Oak Lawn Defendants asserted that a home rule unit could only overcome the limitations of section 8-1-7(b) of the Municipal Code through the adoption of an ordinance. They maintained that the Resolution in this case was not sufficient to render the Municipal Code inapplicable. The Oak Lawn Defendants contended that decision in *City of Burbank* was "antiquated" and had been "questioned and rejected" by subsequent Illinois decisions. The Oak Lawn Defendants maintained that the circuit court should instead follow the second district's decision in *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146 (1995). The Oak Lawn Defendants asserted that, under *Nielsen-Massey*, the city council was required to pass an ordinance specifically superseding the Municipal Code in order for a home rule municipality to enter into a contract that conflicted with the terms of section 8-1-7(b).

¶ 14     The Oak Lawn Defendants further asserted that it was irrelevant that Mr. Vorderer had been elected as the next Oak Lawn president before the Agreement was executed and that he and Mr. Phelan voted to approve the Resolution as members of the board of trustees. The Oak Lawn Defendants pointed out that section 8-1-7(b) specifically refers to the term of the mayor or president holding office at the time the contract is executed.

¶ 15     The circuit court ruled on the Oak Lawn Defendants' motion to dismiss in a written order. The court first found that the Agreement's 60-month term exceeded the limitation provided in section 8-1-7(b) of the Municipal Code. The court found that Oak Lawn did not invoke its home rule authority in approving the Resolution. The court found Proven's reliance on *City of Burbank* was "misplaced" because Burbank "superseded the Illinois Municipal Code through an ordinance," and Oak Lawn did not enact an ordinance in this case. The court found that the circumstances in *Nielsen-Massey* "more closely approximate[d]" the circumstances in this case.

The court determined that *Nielsen-Massey* holds that "an ordinance is required to supersede Section 8-1-7(b)."

¶ 16    The court found that the Resolution in this case was not comparable to an ordinance because the Resolution merely referenced "in boilerplate fashion" Oak Lawn's home rule authority. The court found that this was clearly intended to signal that the Resolution "was a matter pertaining to Oak Lawn's local government and affairs, and not intended to overthrow the dictates of the Illinois Municipal Code." The court also rejected Proven's contentions regarding estoppel and the continuity between the board of trustees and the next administration. The court found that both arguments were refuted by the plain language of section 8-1-7(b). The court determined that because there was no valid and enforceable contract, Proven's claim for tortious interference against Mr. Phelan must also fail. The court therefore granted the Oak Lawn Defendants' motion and dismissed Proven's complaint with prejudice.

¶ 17    Proven filed a timely notice of appeal from the circuit court's dismissal order on October 11, 2022. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303(a) (eff. July 1, 2017).

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, Proven contends that the circuit court erred in granting the Oak Lawn Defendants' motion to dismiss where the unanimous vote of Oak Lawn's board of trustees approving the Agreement in the Resolution was sufficient to constitute an exercise of Oak Lawn's home rule authority, which superseded section 8-7-1(b) of the Municipal Code. Proven contends in the alternative that the court erred in refusing to consider its argument that Oak Lawn was equitably estopped from denying the validity of the agreement.

¶ 20    The circuit court dismissed Proven's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619 (West 2020). We review the dismissal of a complaint pursuant to section 2-619 *de novo*. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008).

¶ 21                              A. Home Rule Units

¶ 22    Home rule units were created by section 6 of article VII of the 1970 Illinois Constitution. *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 107 (1981); Ill. Const. 1970, art. VII, § 6. Home rule units consist of local government in this State that have "an elected chief executive officer, any municipality which has a population of more than 25,000, and any other municipality which elects to become a home rule unit by referendum." *Commercial National Bank of Chicago v. City of Chicago*, 89 Ill. 2d 45, 50 (1982). As defined in the constitution, home rule units "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). A municipality's power to enter into contracts is a matter pertaining to its "government and affairs." See *Harper v. Health Care Service Corp.*, 2023 IL App (1st) 220078, ¶ 30; *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 926 (1994) ("the method by which a home rule unit procures its contracts is a matter pertaining to its government and affairs" and thus falls within the general grant of home rule power as set forth in section 6(a) of article VII).

¶ 23    "The concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between local and State government." *Kanellos v. County of Cook*, 53 Ill. 2d 161, 166 (1972). "Under the home-rule provisions of the 1970 constitution, *** the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated

greater autonomy in the determination of their government and affairs." *Id.* The supreme court has recognized that "an exercise of a home-rule power under section 6(a) which actually conflicts with a statute enacted prior to the adoption of the 1970 Constitution is nonetheless valid unless the power is restricted by a constitutional provision or appropriate legislation enacted subsequent to the 1970 Constitution." *Mulligan v. Dunne*, 61 Ill. 2d 544, 550 (1975). The Municipal Code was adopted in 1961. *Clarke v. Village of Arlington Heights*, 57 Ill. 2d 50, 53 (1974). It therefore falls into that category of pre-1970 Constitution legislation which may be superseded by a home rule unit's exercise of its home rule powers.[1] *Id.* at 54.

¶ 24    Both parties agree that Oak Lawn, which has a population of more than 25,000, is a home rule unit and that a home rule unit may exercise its home rule authority to supersede pre-1970 legislation, such as the Municipal Code. The parties disagree, however, as to how a home rule unit may exercise that authority. The Oak Lawn Defendants maintain, and the circuit court agreed, that a home rule unit may supersede the Municipal Code only through the adoption of an ordinance. Proven contends that the adoption of an ordinance is not required in all cases and that the Resolution passed by the board of trustees in this case was sufficient to invoke Oak Lawn's home rule authority. Proven asserts that this interpretation, which was rejected by the circuit court, is consistent with supreme court and First District precedent.

---

[1]We note that section 8-1-7 of the Municipal Code has been amended after the adoption of the 1970 Constitution. See Pub. Act 84-1323 § 1 (eff. Sept. 9, 1986); Pub. Act 90-0517 § 8 (eff. Aug. 22, 1997). However, neither of these amendments specifically limited a home rule unit's power under this section. The supreme court has instructed that:

> " 'Under section 6(i), the General Assembly can restrict the concurrent exercise of a home rule unit's power by enacting a law which specifically limits such power. But, unless a State law specifically states that a home rule unit's power is limited, then the authority of a home rule unit to act concurrently with the State cannot be considered restricted.' " (Internal quotation marks and emphasis omitted.) *City of Chicago v. Roman*, 184 Ill. 2d 504, 516-17 (1998) (quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 187-88 (1992)).

¶ 25 The supreme court addressed how a home rule unit can "exercise" its home rule authority in *Sommer v. Village of Glenview*, 79 Ill. 2d 383 (1980). In *Sommer*, the plaintiffs sought a writ of mandamus commanding the Village of Glenview (Glenview) to present a proposition to the voters of the village, which, if passed, would lower the maximum property tax rate. *Id.* at 384. More than 30 days before the general election in Glenview, petitions bearing the signatures of more than 1300 qualified voters were filed with the village clerk. *Id.* at 385. The petitions requested that the board present to the voters the question of whether to lower the maximum property tax rate. *Id.* Following a village board meeting, the trustees voted not to place the referendum proposition on the ballot. *Id.* Before the circuit court, the plaintiffs argued that section 162a of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, § 643a) created a duty on the part of Glenview to present the tax-rate proposition to the voters of the village. *Sommer*, 79 Ill. 2d at 384. Section 162a required, *inter alia*, a taxing authority to place the question of establishing a tax rate limit either higher or lower at a regular election upon the petition of 1000 legal voters. *Id.* at 386-87. The circuit court found section 162a to be inapplicable to home rule units of government. *Id.* at 386. The supreme court agreed, finding the statute constituted "an impermissible limitation" of Glenview's "powers to tax delegated to the local Home Rule municipalities by the 1970 Constitution." (Internal quotation marks omitted.) *Id.* at 391.

¶ 26 The plaintiffs' contended, however, that Glenview did not supersede section 162a because Glenview did not exercise its home rule powers by adopting an ordinance purporting to abolish the referendum procedure or explicitly insulate Glenview's tax rate from section 162a. *Id.* at 392. The supreme court first recognized that it had repeatedly held that "a home rule unit's exercise of its power will supercede [*sic*] any conflicting pre-1970-Constitution legislation." (Internal quotation marks omitted.) *Id.* (collecting cases). The court recognized, however, that it had not

defined what constitutes an " 'exercise' " of home rule power. *Id.* The court noted that there was no ordinance adopted that refused to place the proposition on the ballot, but the Glenview board of trustees voted not to place the proposition on the ballot. *Id.* at 392-93. The court continued that:

"We think the plaintiffs argue for an overly technical interpretation of the term 'exercise' when they insist that the adoption of an ordinance is a superseding exercise of home rule power while a vote at a trustees' meeting is not. They are both acts taken by the governing board of a home rule unit, as an assertion of autonomy and independence from State control granted by article VII, section 6, of the 1970 Constitution." *Id.* at 393.

The court concluded that in this case there was a "conflict" between the home rule unit's power of self-government and a State statute, and that the trustees' vote not to place the proposition on the ballot constituted an exercise of home rule power sufficient to evince that section 162a was superseded. *Id.*

¶ 27    The Oak Lawn Defendants do not directly address *Sommer* in their brief, but mention it in passing in a manner that suggests that they believe the reasoning in that case should be limited to the specific facts of that case. That is, it addresses the way in which a home rule unit may exercise its home rule authority only where it is voting to omit a tax proposition from a referendum ballot, but does not address the issue of whether a resolution, rather than an ordinance, is a permissible "exercise" of home rule authority to supersede the Municipal Code. We believe that this is an unjustifiably narrow reading of *Sommer*.

¶ 28    The supreme court has cited the holding in *Sommer* that a municipality may exercise its home rule power without adopting an ordinance in a factual scenario that was completely different than *Sommer*. In *Beneficial Development Corp. v. City of Highland Park*, 161 Ill. 2d 321, 330 (1994), the supreme court cited *Sommer* in finding that the City of Highland Park did not need to

enact an ordinance to exercise its home rule power to enter into a recapture agreement. The court noted, in discussing recapture principles under the Municipal Code, that, "Highland Park, as a home rule unit, is exempted from application of section 9-5-1 [of the Municipal Code.]" *Id.* at 332. This court has likewise recognized that under *Sommer* a home rule unit is not required to adopt an ordinance to exercise its home rule authority where the city council voted to authorize a construction contract that conflicted with the Illinois Prevailing Wage Act (Ill. Rev. Stat. 1983, ch. 48, ¶ 39s-1 *et seq.*). *People ex rel. Bernardi v. City of Highland Park*, 135 Ill. App. 3d 580, 582 (1985), *rev'd on other grounds*, 121 Ill. 2d 1 (1988).

¶ 29     Just last year, another division of this court found that, under *Sommer*, a home rule unit did not need to pass an ordinance to supersede the Municipal Code. *Harper*, 2023 IL App (1st) 220078, ¶¶ 33-34.[2] "On its plain terms, section 6 of article VII does not condition the exercise of home rule authority on the passage of an ordinance, and we decline to add such a requirement to the constitutional provision." *Id.* ¶ 34. Similar to the circumstances in this case, the city council in *Harper* passed a resolution establishing the procedure for the mayor to exercise authority over the city's employee healthcare plan. *Id.* ¶ 2. The *Harper* court found that by passing the resolution, the city superseded the Municipal Code. *Id.* ¶ 38. "As a home rule unit, the City was not required to follow section 8-10-10 of the Illinois Municipal Code in this instance where it passed its own resolution and established its own procedures for executing the 1994 and 2008 agreements, ***." *Id.* The *Harper* court found the same reasoning applied with regard to section 8-1-7. *Id.* ¶ 51.

---

[2]Neither party discusses this court's decision in *Harper* in their briefs. *Harper* was first released as an unpublished Rule 23 order (see Ill. S. Ct. R. 23(b), (e) (eff. Feb. 1, 2023)) after Proven filed its opening brief, but before the Oak Lawn Defendants filed their appellee brief. This court subsequently granted a motion to publish in that case and an opinion was released before Proven filed its reply brief.

¶ 30    In this case, like in *Harper*, Oak Lawn's board of trustees voted to adopt the Resolution that approved the Agreement. This vote represented an act "taken by the governing board of a home rule unit, as an assertion of autonomy and independence from State control granted by article VII, section 6, of the 1970 Constitution." *Sommer*, 79 Ill. 2d at 393. The Oak Lawn board of trustees passed the Resolution despite the fact that the contract it approved conflicted with section 8-1-7(b) of the Municipal Code. The Resolution stated that the Board was approving the Agreement specifically "*IN THE EXERCISE OF ITS HOME RULE POWERS.*" (Emphasis in original.) Although the Resolution's initial references to Oak Lawn's home rule powers may have been "boilerplate" that was quoted almost verbatim from section 6 of article VII of the 1970 Illinois Constitution (see Ill. Const. 1970, art. VII, § 6(a)), this later reference is a clear invocation of Oak Lawn's home rule powers. We find that by unanimously voting to approve the Agreement, Oak Lawn exercised its home rule powers to supersede the Municipal Code.

¶ 31    The Oak Lawn Defendants nonetheless contend, as they did before the circuit court, that we should follow the second district's decision in *Neilsen-Massey*, 276 Ill. App. 3d 146, which they maintain stands for the proposition that a home rule unit may supersede the Municipal Code only through the adoption of an ordinance that specifically overrides the Municipal Code. Proven asserts that *Neilsen-Massey* is contrary to established supreme court precedent and argues that we should instead follow this court's decision in *City of Burbank*, 185 Ill. App. 3d 997. We will address each case in turn.

¶ 32    In *City of Burbank*, representatives of the City of Burbank (Burbank), including the city attorney, five members of the city council, and the city's mayor and administrator, conducted settlement negotiations with a union following claims of unfair labor practices against the city. *Id.* at 999-1000. City representatives signed the settlement agreement in exchange for the union's

withdrawal of the pending unfair labor practice claims. *Id.* at 1000. The agreement was signed by union representatives and the city attorney. *Id.*

¶ 33    Before this court, Burbank contended that the settlement agreement was null and void because it was not approved by a majority vote of the city council as required by the Municipal Code. *Id.* at 1004. This court noted that, as a home rule unit, Burbank could supersede the Municipal Code. *Id.* The court found that "the City may exercise its home rule authority by approving the settlement agreement without a majority vote of the city council or entering into a contract without prior appropriation." *Id.* at 1005.

¶ 34    Proven asserts, like in *City of Burbank*, Oak Lawn here exercised its home rule powers through the actions of its officials and the Resolution passed by its board of trustees. Proven argues that Oak Lawn staff, such as Mr. Phelan, were directly involved in negotiations with Proven and the board's references to Oak Lawn's home rule authority in the Resolution demonstrated an even stronger invocation of its home rule authority than that present in *City of Burbank*.

¶ 35    The Oak Lawn Defendants contend, however, that in *Neilsen-Massey* the second district rejected the reasoning in *City of Burbank*, finding it flawed. They maintain that we should follow this later-decided decision and hold that a home rule unit must enact an ordinance specifically invoking its home rule powers in order to supersede the Municipal Code.

¶ 36    In *Neilsen-Massey*, the plaintiff filed suit against the City of Waukegan (Waukegan) alleging that the city breached an agreement to loan the plaintiff money. *Neilsen-Massey*, 276 Ill. App. 3d at 147. The plaintiff owned a manufacturing business and met with Waukegan officials concerning moving his business to Waukegan. *Id.* Waukegan had in effect an ordinance that granted the city's economic development commission certain powers to implement the city's economic development plan, including soliciting applications and reviewing and evaluating

applications for funds under the plan. *Id.* at 148. In November 1991, the director of economic development for Waukegan sent a letter to the plaintiff confirming that Waukegan would lend him money after he completed the necessary applications. *Id.*

¶ 37 Three days later, the Waukegan city council passed a resolution, which authorized the city to execute and deliver an agreement with the plaintiff to issue and sell revenue bonds in an amount not to exceed $3.5 million. *Id.* The bond proceeds would be used to finance a portion of the plaintiff's new manufacturing plant. *Id.* The agreement was signed by both the plaintiff and Waukegan city officials. *Id.* The resolution further provided that the "officers, employees, and designated agents of the City were authorized to take any further action necessary to carry out the intent and purposes of the agreement." *Id.*

¶ 38 The Waukegan city council subsequently passed another resolution that transferred Waukegan's interest in the agreement to issue bonds to the Illinois Department of Finance Authority (IDFA). *Id.* The resolution noted that at the time Waukegan passed the previous resolution, its intention was to issue revenue bonds to finance the plaintiff's project. *Id.* However, Waukegan was unable to obtain sufficient bond allocation to allow it to issue the bonds, so it transferred its interest to the IDFA. *Id.* at 148-49. Later that day, the Waukegan city council passed another resolution, which waived its right to disapprove the $2.6 million in revenue bonds which the IDFA intended to issue to the plaintiff. *Id.* at 149.

¶ 39 Months later, the plaintiff submitted the loan application to the director of economic development in accordance with the November 1991 letter. *Id.* Waukegan's mayor informed the plaintiff that the letter from the director of economic development that committed to loan the plaintiff money was referring to a different city program than the one for which the plaintiff submitted the application materials. *Id.* After reviewing the terms of the economic development

programs, the plaintiff recognized that he would not qualify under either loan program, which was confirmed by the Waukegan's city attorney. *Id.* Nonetheless, the city's new mayor confirmed that the city would loan the money to the plaintiff. *Id.*

¶ 40 After Waukegan failed to loan any money to the plaintiff, the plaintiff filed suit seeking damages incurred in connection with Waukegan's refusal to make the loan. *Id.* The plaintiff alleged that various ordinances and commitments to loan money by Waukegan officials created an obligation on the part of Waukegan to loan the plaintiff money. *Id.* Waukegan filed a motion to dismiss the plaintiff's complaint, contending that it was not liable to make the loan because, under sections 3.1-40-40 and 8-1-7 of the Municipal Code, a city can only spend or appropriate its money pursuant to an ordinance passed by the city council. *Id.* The circuit court granted Waukegan's motion to dismiss. *Id.* at 150.

¶ 41 On appeal, the plaintiff argued, *inter alia*, that as a home rule unit, Waukegan was not bound by section 8-1-7 of the Municipal Code. *Id.* In making this argument, the plaintiff relied in part on this court's decision in *City of Burbank. Id.* at 151-52. The *Neilsen-Massey* court rejected the holding in *City of Burbank*, finding the analysis in that case "seriously flawed." *Id.* at 152. The court found that

"to override the requirements of section 8-1-7 [of the Municipal Code] in the present case, the city council would have had to pass specifically an ordinance rendering section 8-1-7 ineffective. In the instant case, the City council never voted on a measure to override the requirements of section 8-1-7. The City's mayor and economic director cannot decide to void section 8-1-7 on their own initiative in the absence of approval by the City council." *Id.*

¶ 42    The Oak Lawn Defendants maintain, and the circuit court agreed, that *Neilsen-Massey* holds that a home rule authority can supersede the Municipal Code *only* through the adoption of an ordinance and that *City of Burbank* is therefore inapposite because Burbank did not adopt an ordinance in that case.[3] We believe that this is an improper reading of *Neilsen-Massey*.

¶ 43    In rejecting the holding of *City of Burbank* and finding that Waukegan did not exercise its home rule authority, the *Nielsen-Massey* court noted that *City of Burbank* relied on two supreme court cases in which the supreme court found that home rule units could exercise their home rule authority to pass ordinances that were contrary to the Municipal Code. In *Stryker v. Village of Oak Park*, 62 Ill. 2d 523, 527 (1976), the supreme court found that "[s]ince the adoption of the Constitution of 1970 this court has consistently held that an ordinance enacted by a home rule unit under the grant of power found in section 6(a) supersedes a conflicting statute enacted prior to the effective date of the Constitution." The court concluded that the home rule unit in that case was therefore empowered to enact ordinances that conflicted with the Municipal Code. *Id.* Similarly, in *Clarke*, 57 Ill. 2d at 53-54, the supreme court found that a home rule unit could adopt an ordinance that conflicted with the Municipal Code.

¶ 44    Based on its interpretation of these cases, the *Nielsen-Massey* court found the reasoning in *City of Burbank* "seriously flawed" because the *City of Burbank* court found that Burbank could exercise its home rule authority "without a majority vote of the city council making a prior

---

[3]We note that in distinguishing this court's ruling in *City of Burbank*, the circuit court here incorrectly found that Burbank adopted an ordinance to supersede the Municipal Code in that case. As discussed in our examination of *City of Burbank*, however, Burbank did not adopt an ordinance or indeed even approve the noncompliance with the Municipal Code by a majority vote of the city council. The *City of Burbank* court nonetheless found that Burbank had superseded the Municipal Code. The Oak Lawn Defendants acknowledge that the circuit court misinterpreted the ruling in *City of Burbank*, but assert that this misapprehension is not a "smoking gun" that invalidates the circuit court's judgment because the circuit court found that *Neilsen-Massey* more closely approximated the circumstances in this case.

appropriation for the contract." The *Nielsen-Massey* court disagreed with this decision, holding that the city officials could not supersede the Municipal Code without the approval of a majority of the city council. *Neilsen-Massey*, 276 Ill. App. 3d at 152; see *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561, 564 (2000) (finding that *City of Burbank*'s holding that "a home-rule unit can exercise its authority without a majority vote of the city council" was not "valid"). Thus, the concern of the *Nielsen-Massey* court was not the distinction between an ordinance and a resolution, but whether the actions that contravened the Municipal Code were specifically approved by a majority vote of the city council. "In the instant case, the City council never voted on a *measure* to override the requirements of section 8-1-7." (Emphasis added.) *Neilsen-Massey*, 276 Ill. App. 3d at 152.

¶ 45     *Stryker* and *Clarke* do not hold, and we do not believe the *Neilsen-Massey* court interpreted them to hold, that a municipality may exercise its home rule powers to supersede a pre-1970 statute *only* through the adoption of ordinance. Those cases merely held that a home rule unit may exercise its home rule authority to adopt an ordinance that conflicts with the Municipal Code. Neither case addressed the issue of whether some municipal action other than an ordinance was sufficient to supersede the Municipal Code because that was not at issue in those cases. Notably, these cases were decided before *Sommer* where the supreme court specifically stated that a home rule unit was not required to adopt an ordinance in order to supersede pre-1970 legislation. The holdings in these cases do not turn on the legal distinction between an ordinance and other kinds of municipal action such as a resolution, as the Oak Lawn Defendants urge. The important consideration in these cases is whether the municipality's governing body, the city council, board of trustees, or otherwise, authorized the conduct that was contrary to the pre-1970 statute at issue. In *Sommer*, the board of trustees voted not to place the resolution on the ballot. *Sommer*, 79 Ill. 2d at 385. Similarly, in

*Styker* and *Clarke*, the cities' boards adopted the ordinances. *Stryker*, 62 Ill. 2d at 525-26; *Clarke*, 57 Ill. 2d at 51. In *Neilsen-Massey*, Waukegan's city council did not authorize the conduct by the city officials and the second district found that the mayor and city economic director could not decide to void section 8-1-7 "on their own initiative in the absence of approval by the City council." *Neilsen-Massey*, 276 Ill. App. 3d at 152.

¶ 46      In the case at bar, Oak Lawn's board of trustees specifically authorized the conduct at issue by adopting the Resolution that approved the Agreement that contained terms that contradicted the limitations of section 8-1-7(b) of the Municipal Code authorizing Oak Lawn officials to enter into the Agreement. In addition, members of Oak Lawn board, the president, and other Oak Lawn officials were all significantly involved in negotiating the Agreement and Oak Lawn had knowledge of the Agreement that was evident from its compliance with its terms for the first 3 months of the 60-month term. In contrast, in *Nielsen-Massey*, Waukegan "disavowed the contract[ ] and never performed" it. *Harper*, 2023 IL App (1st) 220078, ¶ 35. Under these circumstances, it is clear that Oak Lawn exercised its home rule authority to supersede section 8-1-7 of the Municipal Code and enter into a contract term that exceeded the limitations of that section.

¶ 47      Finally, we must briefly address this court's decision in *Klekamp v. City of Burbank*, 266 Ill. App. 3d 81 (1994). The *Neilsen-Massey* court cited *Klekamp* for "[f]urther support for [its] conclusion that section 8-1-7 of the [Municipal] Code was not superseded" in that case. *Neilsen-Massey*, 276 Ill. App. 3d at 152. The Oak Lawn Defendants assert that *Klekamp*, which was decided after *City of Burbank*, shows that this court had "backed off of" its holding in *City of*

*Burbank* even before the Second District's decision in *Neilsen-Massey*.[4] That is, that this court had reconsidered its position that a home rule unit could exercise its home rule authority without adopting an ordinance.

¶ 48    In *Klekamp*, the plaintiffs were city employees who sought additional compensation from the City of Burbank for their employment as "firefighter/paramedics" rather than "firefighters." *Klekamp*, 266 Ill. App. 3d at 81-82. The plaintiffs, who were licensed paramedics, were hired as city firefighters after completing the testing process. *Id.* at 82. After a two-year probationary period, the plaintiffs were elevated to the pay status of firefighter/paramedic. *Id.* During the probationary period, Burbank appropriated funds to pay the plaintiffs in accordance with the salary schedule for firefighters. *Id.* at 83. The plaintiffs sought a declaratory judgment that they were entitled to be paid as firefighter/paramedics from the date they were hired. *Id.* The circuit court granted summary judgment in favor of Burbank finding that the plaintiffs were hired as firefighters and paid accordingly. *Id.*

¶ 49    On appeal, the plaintiffs contended that the paramedic services they rendered during their first two years of city employment created a contract implied in law because they actually rendered those services and Burbank was unjustly enriched by those services. *Id.* Burbank contended that the absence of an ordinance to pay the plaintiffs at any rate other than the firefighter's salary

---

[4]We observe that the holding in *City of Burbank* is of questionable relevance here because the city officials in that case acted without the majority approval of the city's board. In this case, as noted, Oak Lawn's board of trustees unanimously adopted the Resolution approving the Agreement. Thus, the circumstances in this case are more akin to those present in *Sommer* and *Harper*. Nonetheless, we do credit the decision in *City of Burbank* for the proposition that a municipality may exercise its home rule authority to supersede the Municipal Code without specifically adopting an ordinance to that effect. We will therefore examine this court's ruling in *Klekamp* to address any inconsistencies that the Oak Lawn Defendants assert exist between these two decisions.

vitiated any alleged contract to pay them a different rate because a municipal employee cannot receive additional compensation without a prior appropriation by the city. *Id.*

¶ 50      This court found that the plaintiffs' request to recover compensation for a job classification for which they were not hired was precluded by the Municipal Code. *Id.* at 84. The court found that the Municipal Code "requires passage of an ordinance to spend or appropriate money on behalf of a city" and the funds must be previously appropriated as described in section 8-1-7(a) of the Municipal Code (65 ILCS 5/8-1-7(a) (West 1992)). *Klekamp*, 266 Ill. App. 3d at 84. The court found the record was clear that the plaintiffs

> "were hired as firefighters, not firefighter/paramedics, that [Burbank] established a separate salary schedule for the two different positions, and that [Burbank] appropriated funds to pay [the] plaintiffs as firefighters for the relevant fiscal years. Under the [Municipal Code and relevant precedent], [the] plaintiffs were not entitled, as a matter of law, to compensation beyond the salary of firefighters during the first two years of their employment." *Id.* at 85.

¶ 51      The *Nielsen-Massey* court found that *Klekamp* "held that section 8-1-7 of the [Municipal] Code requires the passage of an ordinance to spend or appropriate money on behalf of a city." *Nielsen-Massey*, 276 Ill. App. 3d at 152. While true, that is not the issue in the case at bar; nor was it the issue in *City of Burbank*. The question here is not what the Municipal Code requires, but whether Oak Lawn superseded the Municipal Code and therefore did not have to comply with its guidelines. The *Klekamp* court did not address the issue of whether Burbank had superseded the Municipal Code or the proper method for doing so because that was not the issue in that case. As this court has explained, "for a home rule unit *** the Municipal Code is optional, not mandatory. *City of Calumet City v. Illinois Fraternal Order of Police Labor Council*, 344 Ill. App. 3d 1000,

1008 (2003). By not taking any municipal action to supersede the Municipal Code in *Klekamp*, Burbank opted to follow the Municipal Code and was bound by its terms. Although the *Klekamp* court made a passing reference to *City of Burbank* (*Klekamp*, 266 Ill. App. 3d at 86), it did so for reasons unrelated to the home rule issues raised in that case or in this appeal. Unlike the *Nielsen-Massey* court and the Oak Lawn Defendants, we do not believe that the *Klekamp* court's holding reflects any opinion on the propriety of the holding in *City of Burbank*.

¶ 52    Accordingly, we find that Oak Lawn exercised its home rule authority when its board of trustees voted to pass the Resolution approving the Agreement and that Oak Lawn superseded the Municipal Code and entered into a contract that exceeded the limitations of section 8-1-7(b). We find that the circuit court therefore erred in granting the Oak Lawn Defendant's motion to dismiss, and we remand for further proceedings.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we reverse the judgment of the circuit court of Cook County, and we remand for further proceedings.

¶ 55    Reversed and remanded.

***Proven Business Systems, LLC v. Village of Oak Lawn***, **2024 IL App (1st) 221530**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-002363; the Hon. Mary Colleen Roberts, Judge, presiding. |
| **Attorneys for Appellant:** | Ronald L. Sandack and Justin C. Kanter, of Gaido & Fintzen, of Chicago, for appellant. |
| **Attorneys for Appellee:** | J. Allen Wall and Anne M. Skrodzki, of Klein, Thorpe and Jenkins, Ltd., of Chicago, for appellees. |